J-S22038-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: A.T.E.J., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: F.J., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 19 MDA 2019 |

Appeal from the Decree Entered December 5, 2018
In the Court of Common Pleas of Berks County Orphans' Court at No(s):
86289

BEFORE:   SHOGAN, J., DUBOW, J., and PELLEGRINI*, J.

MEMORANDUM BY PELLEGRINI, J.:          **FILED: MAY 22, 2019**

The Appellant, F.J. (Mother), seeks review of the December 5, 2018 decree entered in the Court of Common Pleas of the Berks County Orphans' Court (orphans' court), granting the petition of Berks County Children & Youth Services (BCCYS) to terminate Mother's parental rights to her minor child, A.T.E.J. (Child).  We affirm.

**I.**

An evidentiary hearing on the petition for involuntary termination of Mother's parental rights was held on December 3, 2018.[1]  At the hearing, the

_____

*   Retired Senior Judge assigned to the Superior Court.

[1] At the termination hearing, Child was represented by legal interest counsel and a guardian *ad litem*.  ***See In re Adoption of L.B.M.***, 161 A.3d 172, 174-

orphans' court heard the testimony of Mother, Christine Kopanski (the assigned BCCYS caseworker), and Dr. Richard Small (a psychologist who evaluated Mother). The orphans' court summarized its findings and the procedural history as follows:

> This family came to the attention of BCCYS as the result of a report made on September 29, 2017. The report stated that Mother was unable to follow instructions of hospital staff after the birth of her daughter, and was unable to retain information. It was further reported that Mother drank while she was pregnant. An emergency petition was filed, and BCCYS was granted custody of the Child on October 2, 2017. In addition, a Motion for Aggravated Circumstances was also filed on this date, based upon Mother's prior criminal history.
>
> After a dependency hearing held on October 4, 2017, **Mother was ordered to cooperate with the following conditions**: 1) Parenting education; 2) a mental health evaluation and any recommended treatment; 3) domestic violence treatment and any further recommendations; 4) a drug and alcohol evaluation and any recommended treatment; 5) random urine analysis; 6) casework sessions and any additional recommendations; 7) establishing and maintaining stable and appropriate housing and income; 8) keeping BCCYS informed regarding any changes in residence or income; 9) [signing] releases as requested; and 10) visitation with the Child and acting in an appropriate manner. On this same date, the Court found that Aggravated Circumstances existed in the case, based upon Mother being a founded perpetrator of physical abuse, relating to her plea in 2004 [to a

_____

75, 180 (Pa. 2017) (pursuant to 23 Pa.C.S. § 2313(a), a child who is the subject of a contested involuntary termination proceeding has a statutory right to counsel who discerns and advocates for the child's legal interests). Further, Child's father consented to termination of parental rights and waived notice of the hearing.

charge of attempted murder as to her other child who was an infant at the time].[2]

A second review hearing was held in March of 2018. On that date, Mother was found to have made moderate compliance with the permanency plan, and made only minimal progress toward alleviating the concerns that led to the Child's placement. (Exhibit 6). A third review hearing was held in August of 2018. At this time, Mother was found to have made minimal progress regarding the permanency plan, and made no progress toward alleviating the circumstances that resulted in placement of the Child. On August 22, 2018, BCCYS filed a Petition to Terminate Parental Rights with regard to [Child].

. . . .

**In this case, BCCYS argues that Mother has not completed her court ordered services [permanency goals], including mental health treatment, domestic violence treatment, and maintaining stable housing and income**. Mother argues that she has attended domestic violence counseling and mental health treatment. Mother completed a domestic violence evaluation in November of 2017, and that evaluation resulted in a treatment need. However, Mother has not successfully completed that treatment.

Mother has also completed a Mental Health evaluation with Dr. Small. However, BCCYS has not received any information that Mother has successfully completed any kind of mental health treatment. Mother argues that she has been in treatment since she was nine (9) years old. However, Mother testified that she only goes to treatment one day a month. Mother testified that her therapist does think she should go more often, but she decided to only go once a month during the winter. While Mother argues that she is engaged in mental health treatment, BCCYS has not received any information indicating that Mother has completed any mental health treatment.

---

[2] Mother was sentenced to a prison term of 5-10 years, followed by 10 years of probation. *See* Transcript of Termination Proceedings, 12/3/18, at 9. She was still serving the probationary portion of the sentence at the time of the termination hearing.

In addition, Mother has been unable to maintain appropriate housing. Mother currently resides in a one-bedroom apartment with her fiancé. Upon a visit from a BCCYS case worker, the case worker observed no supplies for a baby in the home.

. . . .

**In this case, as discussed above, Mother has been unable to complete her court ordered services**. However, while Mother argues that she has been engaged in mental health treatment, Dr. Small testified that even treatment might not be sufficient to overcome the diagnosis she has.

After an evaluation with Dr. Small in February of 2018, he diagnosed Mother with three different disorders: Unspecified Bipolar Disorder with Possible Psychotic Features, Post Traumatic Stress Disorder, and a Personality Disorder with Dependent and Schizotypal Features. **Dr. Small testified that even if Mother would take her required medication and attend therapy, he would have strong doubts about her ability to care for a child**.

In addition, Mother has stated that while her therapist would like for her to attend therapy twice a month, she chooses to attend only once a month, as she feels she is doing well and too busy to attend twice a month.

. . . .

BCCYS [took] custody of [Child in] October of 2017. The conditions which led to [Child's] placement continue to exist, and **Mother has not shown an ability to remedy the conditions within a reasonable period of time. Mother has failed to complete domestic violence counseling and therapy and failed to complete mental health treatment. Further, Dr. Small opined that mental health treatment and medication may not be sufficient to remedy the concerns he has about Mother's ability to safely parent a child. After a thorough review of the record and testimony, it is clear that Mother loves her Child, and visits tend to go well. However, Mother has not shown an ability to cure the issues that led to her incapacity in raising her Child safely**.

. . . .

After reviewing the testimony [of the December 3, 2018, Hearing on Involuntary Termination and Parental Rights] and considering the exhibits, this Court finds that the termination of Mother's rights will serve the best interest of the Child. [Child] has been in placement nearly all of her life, having been born on September 29, 2017, and BCCYS taking custody on October 2, 2017. Testimony showed that she is well cared for and loved by her foster grandparents. These grandparents also have custody of [Child's] older sister, and the two have a close bond. While visits with mother do go fairly well, [Child] looks to her grandparents to meet all of her needs.

Orphans' Court Opinion, 2/2/19, at 4-8 (emphases added, citations omitted).

The orphans' court entered a decree of involuntary termination of parental rights, finding that the evidence had established several statutory grounds for involuntary termination. *See* Orphans' Court Opinion, 2/2/19, at 6-9 (citing 23 Pa.C.S. § 2511(a)(1), (a)(2), and (a)(5), and 23 Pa.C.S. § 2511(b)).

Mother appealed and in her brief she presented two issues. First, she argued that the decree should be reversed because it was not supported by clear and convincing evidence that she failed to complete a substantial portion of her permanency goals. *See* Mother's Brief, at 5. Second, she argued that the decree should be reversed because there was insufficient evidence that termination of her parental rights is in the best interests of Child. *Id.* As further discussed below, we hold that the orphans' court relied on statutory grounds for involuntary termination which are supported by our independent review of the record.

## II.

## A.

"The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in [the subsections of 23 Pa.C.S. § 2511(a)]." *In re Adoption of J.N.M.*, 177 A.3d 937, 942 (Pa. Super. 2018) (quoting *In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007)).  If the orphans' court finds that one of those subsections has been satisfied, then under Section 2511(b), it must make a "determination of the needs and welfare of the child under the standard of best interests of the child." *In re L.M.* 923 A.2d at 511.  The orphans' court may then enter a final decree of involuntary termination if it is in the child's best interests as outlined in Section 2511(b). *Id.*

We review such a decree for an abuse of discretion. *In re G.M.S.*, 193 A.3d 395, 399 (Pa. Super. 2018) (citation omitted).  "In order to affirm the termination of parental rights, this Court need only agree with any one subsection under Section 2511(a)." *In re Interest of D.F.*, 165 A.3d 960, 966 (Pa. Super. 2017) (citation omitted).  "We give great deference to trial courts that often have first-hand observations of the parties spanning multiple hearings." *Id.*  "We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence." *In re S.H.*, 879 A.2d 802, 805 (Pa. Super. 2005).

"The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re A.S.*, 11 A.3d 473 (Pa. Super. 2010). "If competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result." *Id.*

In this case, BCCYS asserted that each of the following subsections of Section 2511 were satisfied:

(a)(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(a)(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

. . . .

(a)(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

23 Pa.C.S. § 2511(a).[3]

The orphans' court found that subsections (a)(1), (a)(2) and (a)(5) were proven by clear and convincing evidence. **See** Orphans' Court Opinion, 2/2/19, at 6-9. The orphans' court also found that termination of Mother's parental rights was in the best interests of Child under Section 2511(b). **Id.**, at 8-9.

**B.**

The orphans' court did not abuse its discretion in entering the decree of involuntary termination. First, as to subsection (a)(1), Mother failed to perform parental duties for at least six months prior to the petition. BCCYS took custody of Child on October 2, 2017, shortly after she was born, and the petition of involuntary termination was filed on August 22, 2018. From the time that BCCYS took custody of Child, Mother failed to complete court ordered services, including treatment for domestic violence abuse.

Further, she did not maintain appropriate housing or supplies to care for Child. **See In re A.S.**, 11 A.3d at 478-79 (holding that termination warranted under subsection (a)(1) where parent's housing arrangements were unsuitable for a young child). In short, Mother did little to alleviate the

---

[3] BCCYS also sought termination of parental rights under subsection (a)(8), but the orphans' court did not make a ruling as to that statutory provision. This subsection provides that termination is proper if the conditions which prompted the placement continue to exist after a year from the date of placement and termination would be in the child's best interests.

circumstances which resulted in the placement of Child in the custody of BYCCS. Clear and convincing evidence, therefore, supported termination of parental rights under Section 2511(a)(1).

Termination was also warranted under Section 2511(a)(2) because the evidence showed that Mother's continued incapacity, abuse, neglect or refusal has caused Child to be without essential parental care, control or subsistence necessary for her physical or mental well-being. A psychological examination of Mother revealed her need for treatment of several mental health issues: Unspecified Bipolar Disorder with Possible Psychotic Features, Post Traumatic Stress Disorder, and a Personality Disorder with Dependent and Schizotypal Features. Mother made some effort to undergo therapy and regularly visited Child, but the testimony of the evaluating physician and caseworker indicate Mother failed to make significant progress in her treatment for mental health and domestic violence.

Mother is not engaging in treatment as directed by a physician. Dr. Small testified that her mental incapacity is so severe that even if she fully engaged in treatment, it would be doubtful that she would be able to care for a young child. Mother's psychiatric and criminal history supports the conclusion that the circumstances which resulted in Child's placement cannot or will not be remedied by Mother. Thus, the orphans' court did not err in finding that Mother's incapacity is a basis for termination under Section 2511(a)(2).

For similar reasons, there was clear and convincing evidence that termination was warranted under Section 2511(a)(5). Mother has not demonstrated an ability to overcome her mental health issues to the extent that she could safely care for Child. *See In re P.A.B.*, 570 A.2d 522, 528 (Pa. Super. 1990) ("A determination that the Parents' incapacity results in an inability to care for the children and that the condition cannot improve over time is insufficient to warrant termination under 2511(a)(5)."). In fact, Mother was still serving the probationary term of her sentence for the attempted murder of her other daughter at the time of the termination proceedings in this case. Although Mother has undergone some treatment and made attempts to become fit to care for Child, the orphans' court did not err in concluding that Mother fell short in that regard.

## C.

Having found that the termination of Mother's parental rights was justified under Section 2511(a), the next step of our inquiry is whether the termination is in the best interests of Child. There are a number of factors to consider in this analysis:

> Section 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. . . . While a parent's emotional bond with his or her child is a major aspect of . . . section 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa. Super. 2015); *In re*

***M.Z.T.M.W.***, 163 A.3d 462, 464 (Pa. Super. 2017). Moreover, "[c]ommon sense dictates that courts considering termination must also consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents." ***In re T.S.M.***, 71 A.3d 251, 267 (Pa. 2013) (citation omitted).

Here, the record reflects that the best interests of Child were served by terminating Mother's parental rights. Child had been fostered by her grandparents nearly all her short life. Child's grandparents love and care for Child, meeting all of her needs. These grandparents also have custody of Child's older sister and the two siblings have formed a close bond. Mother's own mental health struggles and inability to provide a safe environment for Child further establish that termination is in Child's best interests. Thus, the record supports the orphans' court's decision to terminate Mother's rights, and the decree of involuntary termination must stand.

Decree affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/22/2019

- 11 -