J-A16027-17

2018 PA Super 203

| | | |
|---|---|---|
| IN RE: G.M.S., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: L.N.C., NATURAL | : | |
| MOTHER | : | No. 299 WDA 2017 |

Appeal from the Order January 30, 2017
In the Court of Common Pleas of Allegheny County
Orphans' Court at No(s): CP-02-AP-0000173-2016

| | | |
|---|---|---|
| IN RE: B.D.C., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: L.N.C., NATURAL | : | |
| MOTHER | : | No. 300 WDA 2017 |

Appeal from the Order January 30, 2017
In the Court of Common Pleas of Allegheny County
Orphans' Court at No(s): CP-02-AP-0000174-2016

| | | |
|---|---|---|
| IN RE: L.A.C., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: L.N.C., NATURAL | : | |
| MOTHER | : | No. 301 WDA 2017 |

Appeal from the Order January 30, 2017
In the Court of Common Pleas of Allegheny County
Orphans' Court at No(s): CP-02-AP-0000175-2016

BEFORE:   STABILE, J., FORD ELLIOTT, P.J.E., and STRASSBURGER, J.*

*Retired Senior Judge assigned to the Superior Court.

OPINION BY STRASSBURGER, J.: **FILED JULY 11, 2018**

In these consolidated appeals, L.N.C. (Mother) appeals from the orders entered January 30, 2017, in the Court of Common Pleas of Allegheny County, which terminated involuntarily her parental rights to her minor children, G.M.S. (born in 2007), B.D.C. (born in 2012), and L.A.C. (born in 2014) (collectively, "Children"). We affirm.

The certified record reveals the following. Mother is the biological mother of Children.[1] Mother has never married and, prior to 2015, exercised sole legal and physical custody of Children. In the three years between March of 2012 and March 2015, the family was referred to the Allegheny County Office of Children, Youth and Families (CYF) eleven times. Eventually, on March 13, 2015, CYF opened a case and established safety goals for Mother; however, Mother failed to make significant progress and CYF became concerned about the safety of Children while they were in Mother's care. On May 12, 2015, CYF filed an emergency custody application (ECA) and requested a shelter care hearing on behalf of Children. That hearing was held on May 15, 2015, and a shelter care order was entered. Under the terms of the order, legal custody of Children was transferred to CYS. G.M.S. was placed

---

[1] Mother has a fourth child, M.C., born in April of 2016. M.C. was removed from Mother's care at birth, adjudicated dependent in May of 2015, and placed in foster care. At the time of the termination hearing as to Children, M.C. was also in the care of maternal grandparents. She is not a subject of this appeal.

in the physical custody of her biological father[2], while B.D.C. and L.A.C. were placed in foster care. Mother was ordered to have no unsupervised contact with Children. On May 18, 2015, CYF filed a second ECA after discovering that Mother was violating the terms of the first order. Continued placement was ordered, with physical custody of B.D.C. and L.A.C. granted to Maternal Grandparents.

On June 2, 2015, CYF filed dependency petitions alleging that Children were without proper care or control. On June 16, 2015, CYF withdrew its petition with regard to G.M.S.; however, it chose to proceed on the petitions filed on behalf of B.D.C. and L.A.C. On August 4, 2015, both B.D.C. and L.A.C. were adjudicated dependent, although they remained in Maternal Grandparents' care.

On October 21, 2015, when neither Mother nor G.M.S.'s biological father, A.G.S., was making progress with respect to the child safety goals set by CYF, a dependency petition was filed on behalf of G.M.S. G.M.S. was adjudicated dependent on December 1, 2015 and removed from her father's care. Legal and physical custody of G.M.S. was transferred to CYF and she was placed with her siblings in the care of Maternal Grandparents. Following

_____

[2] Genetic testing established that G.M.S.'s biological father is A.G.S. and L.A.C.'s biological father is M.J.R. B.D.C.'s putative father, J.E.H., did not make himself available for genetic testing.

the adjudications of dependency, the permanency plan and placement goal for Children was to return to Mother's care, with a concurrent goal of adoption.

On September 26, 2016, CYF filed separate petitions to terminate Mother's parental rights to Children involuntarily.[3]  The orphans' court conducted a termination hearing as to all three petitions on January 27, 2017. Following the hearing, on January 30, 2017, the court entered separate orders terminating Mother's parental rights to Children.  Mother timely filed a notice of appeal on February 16, 2017, along with a concise statement of errors complained of on appeal.

On appeal, Mother asks us to consider whether the orphan's court abused its discretion in "concluding that termination of [Mother's] parental rights would serve the needs and welfare of [] Children pursuant to 23 Pa.C.S. § 2511(b)."  Mother's Brief at 9.  Additionally, Mother contends that remand is necessary in order to appoint counsel for Children. *Id.* at 19-20.

We review Mother's issues mindful of our well-settled standard of review.

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record.  If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion.  A decision may be reversed for an abuse

---

[3] CYF also sought to terminate involuntarily the rights of each child's father. Following a hearing, the orphan's court determined that termination was in Children's best interest, and the rights of each man were terminated with respect to that man's putative child.  The record does not indicate whether any of the men appealed the orphans' court's decisions.

of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

We first address Mother's argument that the orphans' court erred by failing to appoint counsel to represent Children's legal interests pursuant to 23 Pa.C.S. § 2313(a) and our Supreme Court's recent holding in *In Re Adoption of L.B.M.*, 2017 WL 2257203 (Pa. 2017). Mother acknowledges that Children, collectively, had the benefit of a guardian *ad litem* (GAL) during the termination proceedings, but contends that "the appointment of and representation by a [GAL] who is also an attorney does not satisfy the mandate" of the statute. Mother's Brief at 11.

Initially, we observe that Mother did not raise this claim before the orphans' court, and failed to include it in her concise statement of errors complained of on appeal or as a separate issue in the statement of questions included in her brief to this Court.[4] Under normal circumstances, this would result in waiver. Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."); *Krebs v. United Refining Co. of Pa.*, 893 A.2d 776, 797 (Pa. Super. 2006) (citations omitted)

---

[4] This omission is especially glaring considering Mother's counsel, the Allegheny County Bar Foundation Juvenile Court Project, filed an *amicus* brief in *L.B.M.* in support of appellant-mother and her right-to-counsel argument.

("[A]ny issue not raised in a statement of matters complained of on appeal is deemed waived.").

However, Mother contends that this claim cannot be waived as the error is structural in nature. Mother's Brief at 19. We agree that Mother cannot waive Children's right to counsel. *See In re Adoption of G.K.T.*, 75 A.3d 521 (Pa. Super. 2013) (holding that "[t]he right to counsel belongs to the child, and there is no appointed counsel for the child who could have raised the child's rights in the proceedings before the [orphans'] court.")(quoting *In re E.F.H.*, 751 A.2d 1186, 1189 (Pa. Super. 2000)). Therefore, we proceed to address the merits of this issue. Section 2313(a) provides as follows.

> **(a) Child.--**The court shall appoint counsel to represent the child in an involuntary termination proceeding when the proceeding is being contested by one or both of the parents. The court may appoint counsel or a guardian ad litem to represent any child who has not reached the age of 18 years and is subject to any other proceeding under this part whenever it is in the best interests of the child. No attorney or law firm shall represent both the child and the adopting parent or parents.

23 Pa.C.S. § 2313(a).

In *L.B.M.*, our Supreme Court held that Section 2313(a) requires courts to appoint counsel to represent the legal interests of any child involved in a contested involuntarily termination proceeding. 2017 WL 2257203 at 6. The Court explained that a child's legal interests are distinct from his or her best interests, in that a child's legal interests are synonymous with the child's preferred outcome, and a child's best interests must be determined by the court. 2017 WL 2257203 at 1.

Importantly, the justices disagreed on whether an attorney who serves as a child's dependency GAL can also serve as that child's counsel during contested involuntary termination proceedings. In the Court's lead opinion, Justice Wecht, joined by Justices Donohue and Dougherty, opined that a child's legal interests cannot be represented by his or her dependency GAL. 2017 WL 2257203 at 7. However, the Court's remaining four justices disagreed with that portion of the lead opinion, and opined in a series of concurring and dissenting opinions that a child's dependency GAL may serve as his or her counsel, so long as the GAL's dual role does not create a conflict of interest. 2017 WL 2257203 at 9. Thus, in this case, we conclude that the orphans' court was not required to appoint a separate attorney to represent Children's legal interests, so long as Children's GAL was an attorney, and so long as Children's legal and best interests did not appear to be in conflict.

Upon review, it is clear that Children's legal interests and best interests were aligned throughout the termination proceedings. Dr. Patricia Pepe testified at the termination hearing that she asked G.M.S. with whom she would like to live and G.M.S. indicated that her preference was to be adopted by Maternal Grandparents and "visit with" Mother.[5] N.T., 1/27/2017, at 59,

_____

[5] B.D.C. and L.A.C., were four-and-a-half and two-and-a-half, respectively, at the time of the termination hearing and were not interviewed individually by Dr. Pepe, although she did observe the younger children interact with Mother. Dr. Pepe testified that Children appeared to have a primary attachment to maternal grandparents and, of the younger children, B.D.C. only acknowledged Mother as a caregiver to "a small extent." N.T., 1/27/2017, at

71.  Child's GAL, Stephanie Pawlowski, Esquire, argued on behalf of Children's position during the hearing, *id.* at 94, and filed a brief before this Court supporting the termination of Mother's parental rights.  Thus, Attorney Pawlowski represented Children's legal and best interests.  No remand is necessary.[6]

We turn now to Mother's contention that the orphans' court abused its discretion by terminating her parental rights.  Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S. §§ 2101-2938, which requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent.  The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a).  Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests

_____

69, 72. L.A.C. did not appear to recognize Mother as a parental figure. *Id.* at 69.

[6] The author of this Opinion dissented in *L.B.M.* to opine that the language of Section 2313(a) "suggest[ed] that the legislature intended to differentiate between legal counsel and GAL in TPR proceedings," and favored remand for a new hearing with the appointment of legal counsel because "the difference between the child's interests and the best interest of the child is staggering, and it is readily apparent that a GAL appointed to represent the [children's] interests in the dependency proceedings cannot advocate effectively on the [children's] behalf with respect to issues raised surrounding the TPR and adoption without creating a conflict." *In re: Adoption of L.B.M.*, 2016 WL 3080124 at *34 (Pa. Super. May 31, 2016) (unpublished) (Strassburger, J., dissenting).  The author agrees with the position taken by Justice Wecht in the Supreme Court's Opinion, but is bound to follow the reasoning of the four justices as discussed above.

of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

In this case, the orphans' court terminated Mother's parental rights to G.M.S. pursuant to Sections 2511(a)(2), (5), and (b), and to B.D.C. and L.A.C. pursuant to Sections 2511(a)(2), (5), (8), and (b). In her brief, Mother concedes that CYF "did clearly and convincingly establish threshold grounds for termination [as to Children] pursuant to Section 2511(a)(2)." Mother's Brief at 15. Therefore, we analyze the orphans' court's decision pursuant to Section 2511(b) only. That subsection provides as follows.

> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. §§ 2511(a)(2), (5), (8), and (b).

> Section 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. As this Court has explained, Section 2511(b) does not explicitly require a bonding analysis and the term 'bond' is not defined in the Adoption Act. Case law, however, provides that analysis of the emotional bond, if any, between parent and child is a factor to be considered as part of our analysis. While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest

- 9 -

analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.

> [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa. Super. 2015) (quoting *In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011)) (quotation marks and citations omitted).

Here, Mother argues that terminating her parental rights would be contrary to Children's needs and welfare. Mother contends that the court erred in adopting Dr. Pepe's analysis, improperly balanced the benefits of Children remaining with Maternal Grandparents against the "perceived faults" of Mother, and failed to address what effect termination would have on Children. Mother's Brief at 18-19.

As this Court has explained, "a trial court has discretion to accept or reject a witness' testimony, including that of an expert witness, and is free to believe all, part, or none of the evidence presented." *In re Bosley*, 26 A.3d 1104, 1111 (Pa. Super. 2011) (citing *Childress v. Bogosian,* 12 A.3d 448, 456 (Pa. Super. 2011)). In this case, Dr. Pepe described Children's interactional visit with Mother as "utter chaos" and expressed her concern that

Mother would be unable to parent all three children at once. N.T., 1/27/2017, at 61-62. Dr. Pepe explained that the youngest children do not recognize Mother as a parental figure and, while there is evidence of a bond between G.M.S. and Mother, such bond is not beneficial to G.M.S. and is eclipsed by that G.M.S. has to her Maternal Grandparents. *Id.* at 59, 67, 69. Dr. Pepe opined that, even in light of G.M.S.'s connection with her mother and the fact that continued communication between Mother and Children after termination of Mother's rights was not a guarantee, adoption was in Children's best interests. *Id.* at 67-68, 71-72.

In its opinions, the orphans' court found credible Dr. Pepe's testimony that G.M.S. "has an attachment to Mother" but that such attachment "is not necessarily positive or beneficial" to the child. Orphans' Court Opinion re: G.M.S., 3/17/2017, at 24 (quotations omitted). In contrast, the court acknowledged that the bond G.M.S. has with Maternal Grandparents is "strong," that G.M.S. looks to her grandparents to satisfy her daily needs, and that she has expressed a desire to be adopted and "visit with" Mother. In light of those facts, the court concluded that the permanency and stability provided by adoption by Maternal Grandparents would significantly outweigh any potential harm to G.M.S. *Id.* at 24-25. With respect to B.D.C., the court found that there was no substantial bond between Mother and child and concluded that termination would be in his best interest. Orphans' Court Opinion re: B.D.C., 3/17/2017, at 24. In so holding, the court found significant the age

of the child and his degree of attachment to Maternal Grandparents. ***Id.*** at 25. Similarly, the court held that termination of Mother's parental rights to L.A.C., who was just a year old when adjudicated dependent and placed in the care of Maternal Grandparents, would serve the child's best interests because there is "no substantial bond" between Mother and child. Orphans' Court Opinion re: L.A.C., 3/17/2017, at 24. In sum, the court concluded that Children's bond with Mother is not necessary and beneficial, and that only Maternal Grandparents have met Children's developmental, physical, and emotional needs and welfare. ***Id.***

Thus, the record supports the decision of the orphans' court to accept Dr. Pepe's recommendation and terminate Mother's parental rights. The evidence presented during the termination hearing establishes that Children's interactions with Mother are chaotic and without structure, and that Children are thriving in their grandparents' care. Even assuming that G.M.S. and Mother do share a bond, preserving Mother's parental rights could merely prolong the emotional harm suffered by G.M.S. and her siblings. By terminating Mother's parental rights now, the orphans' court has ensured that Children will receive the greatest degree of permanence and stability possible, while protecting Children from this potential distress and uncertainty. As this Court has stated, "a child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities. The court cannot and will not subordinate indefinitely a child's

need for permanence and stability to a parent's claims of progress and hope for the future." ***In re Adoption of R.J.S.***, 901 A.2d 502, 513 (Pa. Super. 2006).

Finally, we reject Mother's assertion that the orphans' court placed an undue emphasis on her failings as a parent. Mother is correct that Section 2511(b) focuses on the welfare of Child, and not Mother's parental incapacity. However, it is beyond cavil that Mother's incapacity, and the likelihood that she will never remedy that incapacity, which she has conceded, is an important consideration when determining what is best for Children. ***See C.D.R.***, 111 A.3d at 1220 (citing ***In re Adoption of M.E.P.***, 825 A.2d 1266, 1276 (Pa. Super. 2003)) ("Clearly, it would not be in Child's best interest for his life to remain on hold indefinitely in hopes that Mother will one day be able to act as his parent.").

Based on the foregoing, we conclude that the orphans' court did not abuse its discretion by terminating Mother's parental rights to Children. We therefore affirm the court's January 30, 2017 orders.

Orders affirmed.

Judge Stabile joins the opinion.

PJE Ford Elliott files a concurring statement in which Judge Stabile joins.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/11/2018