J-S27044-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: A.F., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: K.F., NATURAL MOTHER | : | |
| | : | |
| | : | No. 304 WDA 2019 |

Appeal from the Order Dated December 21, 2018
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s):  CP-02-AP-0000193-2017

| | | |
|---|---|---|
| IN THE INTEREST OF: A.A.W., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: K.F., NATURAL MOTHER | : | |
| | : | |
| | : | No. 305 WDA 2019 |

Appeal from the Order Dated December 21, 2018
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s):  CP-02-AP-0000194-2017

| | | |
|---|---|---|
| IN THE INTEREST OF: A.J.J., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: K.F., NATURAL MOTHER | : | |
| | : | |
| | : | No. 306 WDA 2019 |

Appeal from the Order Entered December 21, 2018
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s):  CP-02-AP-0000195-2017

| | | |
|---|---|---|
| IN THE INTEREST OF: A.M., A MINOR | : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: K.F., NATURAL MOTHER | : : | |
| | : | No. 307 WDA 2019 |

Appeal from the Order Dated December 21, 2018
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s): CP-02-AP-0000196-2017

BEFORE:   OLSON, J., OTT, J., and COLINS*, J.

MEMORANDUM BY COLINS, J.:                    **FILED JUNE 26, 2019**

In these consolidated appeals, Appellant, K.F. ("Mother"), appeals from the orders entered December 21, 2018, that involuntarily terminated her parental rights to her children, A.F. (born 2010), A.A.W. (born 2013), A.J.J. (born 2014), and A.M. (born 2016) [hereinafter, collectively, "Children"], pursuant to 23 Pa.C.S. § 2511(a)(5), (8), and (b).  We affirm.

The orphans' court and this Court in an earlier decision fully set forth the relevant facts and procedural history of this case.  **See In re A.F.**, No. 589 WDA 2018, unpublished memorandum at 3-5 (Pa. Super. filed September 17, 2018); Orphans' Court Opinion ("OCO"), filed March 18, 2019, at 2-16.  Therefore, we have no reason to restate them at length.  For the convenience of the reader, we briefly note that, in November 2017, the

_____
*   Retired Senior Judge assigned to the Superior Court.

- 2 -

J-S27044-19

Allegheny County Office of Children, Youth and Families ("OCYF") filed petitions to terminate Mother's parental rights to Children pursuant to 23 Pa.C.S. § 2511(a)(2), (5), (8), and (b),[1] which the orphans' court initially denied[2] on March 16, 2018.[3] OCYF timely appealed. In its appeal, "OCYF

---

[1] In January 2018, the orphans' court appointed counsel for all Children but, at the request of the Office of Conflict Counsel, appointed separate legal interests counsel for then-seven-year-old A.F., who was deemed the only one of Children old enough to articulate her preferences to legal counsel and who could have had different interests from A.A.W., A.J.J., and A.M., as A.F. was living in a separate foster home from her siblings; the orphans' court considered the other three children -- then ages one to four years old -- too young to direct legal interests counsel and hence appointed a joint guardian *ad litem* and legal advocate for A.A.W., A.J.J., and A.M. N.T., 12/21/2018, at 4-5. ***See In re L.B.M.***, 161 A.3d 172, 173-75, 180 (Pa. 2017) (plurality) (courts must appoint counsel to represent the legal interests of any child involved in a contested involuntary termination proceeding; a child's legal interests are distinct from his or her best interest, in that a child's legal interests are synonymous with the child's preferred outcome, and a child's best interest must be determined by the court); ***see also In re T.S.***, 192 A.3d 1080, 1089-93 (Pa. 2018) (a child's statutory right to appointed counsel is not waivable, even where the child is too young or nonverbal to communicate his or her preference; reaffirming the ability of an attorney-guardian *ad litem* to serve a dual role and to represent a child's non-conflicting best interests and legal interests); ***In re G.M.S.***, 193 A.3d 395, 399-400 (Pa. Super. 2018) (orphans' court not required to appoint separate attorney to represent children's legal interests, so long as children's guardian *ad litem* was an attorney and children's legal and best interests did not appear to be in conflict).

[2] "Concomitantly, OCYF petitioned for the termination of the parental rights of the fathers to Children. The respective fathers did not contest the petitions; their rights were terminated; and they have not appealed." ***A.F.***, No. 589 WDA 2018, unpublished memorandum at 5 n.4.

[3] All four orders denying termination were dated March 16, 2018. However, the orders as to A.A.W., A.J.J., and A.A.M. were not entered on the docket

*(Footnote Continued Next Page)*

- 3 -

contend[ed] that the orphans' court erred in concluding that OCYF had failed to establish the statutory requirements of Section 2511(a)(8)."  **A.F.**, No. 589 WDA 2018, unpublished memorandum at 8.[4]  In particular, OCYF argued that the orphans' court "erred in declining to analyze the needs and welfare" of Children.  **Id.**  This Court agreed with OCYF, explaining:

> [I]n order to establish the third statutory requirement of Section 2511(a)(8), the evidence must demonstrate that termination of parental rights would best serve the needs and welfare of the child.  [**In re**] **C.L.G.**, 956 A.2d [999,] 1009 [(Pa. Super. 2008) (*en banc*)] (acknowledging this element of Section 2511(a)(8) coincides with Section 2511(b) but directing distinct analyses) . . . [T]estimony . . . suggests that the Children, particularly the older two, maintain a strong bond with Mother. . . . OCYF presented very limited testimony regarding the effects of severing this bond . . .
>
> Mindful of our standard of review, we shall not usurp the role of the orphans' court as factfinder.  We shall not weigh this evidence nor pass judgment on its credibility.  Thus, we decline to credit OCYF's suggestion that it established the third statutory requirement of Section 2511(a)(8).
>
> For these reasons, we vacate the orders denying OCYF's petitions to terminate Mother's parental rights to the Children and remand for further proceedings.  On remand, the orphans' court shall address its legal errors, consistent with the above analysis.  In light of the limited testimony indicative of the effects termination would have on the bond between Mother and the Children, the parties must be given an opportunity to present further evidence in this regard.

**Id.** at 12-15 (some citations omitted).

*(Footnote Continued)* ————————

until March 29, 2018, and the order for A.F. was not entered until April 11, 2018.

[4] OCYF did not raise any claims related to 23 Pa.C.S. § 2511(a)(2) or (5).

- 4 -

Pursuant to this Court's remand, the orphans' court held another hearing on December 21, 2018, and OCYF recalled Dr. Beth Bliss, who had conducted separate psychological evaluations of Mother and A.F. and an interactional evaluation of Mother and Children in July and August 2017 and who had testified at the March 2018 hearing. *Id.* at 4; OCO, filed March 18, 2019, at 10. Dr. Bliss acknowledged that she had not met with Mother either individually or with Children since August 2017, N.T., 12/21/2018, at 28, but she testified about her earlier evaluations of Mother, Children, and Children's foster parents with greater specificity than during the prior termination hearing.

> While in the foster home, it was reported that A.F. had made allegations of sexual abuse by maternal grandfather and by one of Mother's paramours. During the evaluation, Dr. Bliss attempted to ask A.F. about the allegations and she reported to being sexually abused by maternal grandfather who she referred to as "pappy". . . .
>
> During her testimony, Dr. Bliss opined that the older children, A.F. and [A.A.W.,] both had an insecure bond with Mother. She also opined that the bond was not a necessary or beneficial one. Dr. Bliss reported that any emotional consequences from severing the bond could be addressed through therapeutic services.

OCO, filed March 18, 2019, at 10, 15; *see also* N.T., 12/21/2018, at 35-42 (Dr. Bliss testified: A.F. and A.A.W. both had "insecure" bonds with Mother but would experience some "emotional turmoil" following termination; A.A.W.'s attachment to Mother presented itself through "negative attention

seeking behaviors" and "clinginess").[5]  Dr. Bliss further testified that "Mother struggled to address [A.F.'s and A.A.W.'s] emotional needs."  OCO, filed March 18, 2019, at 13.[6]

> [Dr. Bliss] reported that [A.J.J.] has very little attachment to any adult . . . Dr. Bliss reported that while A.M. was comfortable around Mother, she did not believe that the child had a bond with Mother.  She reported that neither [A.J.J. nor A.M.] sought Mother out for emotional validation as they did with their foster parents.  Dr. Bliss opined that neither [A.J.J. nor A.M.] would be negatively impacted if their relationship with Mother was severed.  Dr. Bliss reported that the current foster homes were appropriate adoptive resources and that all of [C]hildren exhibited some level of a close and positive bond with their foster parent.

*Id.* at 15-16; *see also* N.T., 12/21/2018, at 42-43.

On January 16, 2019, the orphans' court granted the termination petition pursuant to 23 Pa.C.S. § 2511(a)(5), (8), and (b).  Mother filed this timely direct appeal, along with a concise statement of errors complained of on appeal.  *See* Pa.R.A.P. 1925(a)(2)(i).[7]

Mother presents the following issue for our review:

---

[5] Dr. Bliss had also "reported allegations of sexual abuse and inappropriate sexual behavior" by A.F. and A.A.W. during her initial testimony in March 2018.  *A.F.*, No. 589 WDA 2018, unpublished memorandum at 4.

[6] A.F.'s legal interests counsel represented to the orphans' court that A.F. wanted to remain permanently with her foster family but "was interested in visiting with [M]other."  N.T., 12/21/2018, at 67-68.

[7] The orphans' court entered its opinion on March 18, 2019.  *See* Pa.R.A.P. 1925(a)(2)(ii).

Did the [orphans'] court abuse its discretion and/or err as a matter of law in concluding that termination of Natural Mother's parental rights would serve the needs and welfare of the Children pursuant to 23 Pa.C.S. § 2511(b)?

Mother's Brief at 8.

When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that we would give to a jury verdict. We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

The standard of clear and convincing evidence is defined as testimony that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.

The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence. If competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result.

*In re B.J.Z.*, 2019 PA Super 106, *9-*10 (filed April 4, 2019) (internal quotation marks and some internal citations omitted) (some formatting).

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S. §§ 2101-2938, which requires a bifurcated analysis.

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants

- 7 -

termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child.

*In re G.M.S.*, 193 A.3d 395, 401 (Pa. Super. 2018) (citation omitted). As Mother does not raise an issue in her brief with respect to Section 2511(a)(5) or (8), Mother has waived any claims that the evidence was insufficient to establish that her parental rights should be terminated under those two subsections, and we review the subject orders pursuant to Section 2511(b) only. **See** Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."); **Krebs v. United Refining Co. of Pennsylvania**, 893 A.2d 776, 797 (Pa. Super. 2006) (stating that any issue not set forth in or suggested by an appellate brief's Statement of Questions Involved is deemed waived under Pa.R.A.P. 2116(a)).

Section 2511(b) states:

The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(b). With respect to Section 2511(b), this Court has explained that,

Section 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. . . . Section 2511(b) does not explicitly require a bonding analysis and the term 'bond' is not defined in the Adoption Act. Case law, however, provides that analysis of the emotional bond, if any, between parent and child is a factor to be considered as part of our analysis. While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.

In addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*G.M.S.*, 193 A.3d at 401 (citations and internal brackets omitted) (some formatting).

Mother contends that the orphans' court "abused its discretion and/or erred as a matter of law in concluding that termination of [her] parental rights would serve the needs and welfare of the Children pursuant to 23 Pa.C.S. § 2511(b)." Mother's Brief at 14. Specifically, Mother argues:

In order to make a determination that termination of parental rights meets the needs and welfare of child, the trial court **must** be presented with evidence of and analyze the emotional effect that termination could have on that child. . . .

In this case, the evidence presented by [OCYF] in December of 2018 was the exact same evidence it presented on March 16, 2018 after which the [orphans'] court denied its petitions. This evidence has *already been rejected* by this Court as clear and convincing evidence of the needs and welfare requirement or 23 Pa.C.S. §2511(a)(8).

*Id.* at 17-18 (bold emphasis in original; italicized emphasis added) (citing

N.T., 3/16/2018, at 27-69; N.T., 12/21/2018, at 26-56; OCYF Exhibit 2;

*A.F.*, No. 589 WDA 2018, unpublished memorandum at 12-15).[8]

_____

[8] Mother makes no argument about Children's need for safety, security, or stability. Mother's Brief at 14-18; *see G.M.S.*, 193 A.3d at 401 ("the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent"). Assuming Mother had made such an argument, we would concur with the findings and analysis of the orphans' court:

> [In 2013,] Mother . . . reported [to OCYF] to having unaddressed mental health concerns . . . OCYF implemented services to assist Mother with obtaining housing, addressing her mental health, and connecting her with community resources. . . . [By 2015, s]he completed mental health treatment . . .
>
> [Nevertheless,] Dr. Bliss noted because of [Mother's] past history of trauma, that she believed Mother to have adapted some maladaptive personality traits that could prevent her from engaging in healthy relationships with others as well as positive parenting behaviors. . . .
>
> Dr. Bliss concluded that she was worried about the safety of [C]hildren due to the significant history of various allegations, including physical and sexual abuse and neglect. Dr. Bliss ultimately opined that Mother's maladaptive personality traits and mental health problems inhibit her ability to provide a safe and nurturing environment for [C]hildren. . . .
>
> Mother's poor decision making and mental health concerns have ultimately affected her ability to provide a safe and stable home for her children. It is not in the best interest of these children to keep their lives on hold until Mother can develop the skills necessary to keep them safe. . . . All of the foster parents have been able to provide the safety, security and stability that [C]hildren desperately need.

*(Footnote Continued Next Page)*

Mother misinterprets this Court's instructions. This Court never stated that OCYF presented insufficient evidence to establish the "needs and welfare" analysis pursuant to 23 Pa.C.S. § 2511(a)(8). It concluded that the orphans' court improperly failed to reach that factor as part of its analysis. *A.F.*, No. 589 WDA 2018, unpublished memorandum at 14-15. This Court thus remanded for the orphans' court to address this statutory requirement of § 2511(a)(8). This Court's instructions stated that "the parties must be **given the opportunity** to present further evidence" -- not that the parties **must** present further evidence. *Id.* at 15. In other words, the decision allowed the parties to present additional evidence but did not require them to do so.

Assuming this Court had ordered OCYF to present additional evidence, while, admittedly, Dr. Bliss did not meet with Mother, Children, or Children's foster parents subsequent to remand, N.T., 12/21/2018, at 28, her testimony in December 2018 had much greater specificity about the effect termination would have on Children than her testimony from March 2018. She testified that, when she had seen Children with Mother in August 2017, none of Children had such strong bonds with Mother that termination would

_____
*(Footnote Continued)*

OCO, filed March 18, 2019, at 3, 6, 12, 14, 16. As this Court has observed: "Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs." *In re K.Z.S.*, 946 A.2d 753, 759 (Pa. Super. 2008).

- 11 -

be detrimental to them. OCO, filed March 18, 2019, at 15; N.T., 12/21/2018, at 35-41. She explicitly testified that, while there would be a period of adjustment, A.F. would not be traumatized by termination. Additionally, she testified that, although A.A.W. showed some signs of attachment to Mother, the attachment was "negative" and the bond was "insecure" and presented itself in part through "negative attention seeking behaviors[,]" "clinginess[,]" and increased emotions. OCO, filed March 18, 2019, at 15; N.T., 12/21/2018, at 38-41. She admitted that he would experience some turmoil following termination of Mother's rights but that the benefits of permanency outweighed the cost of this emotional difficulty and adjustment. OCO, filed March 18, 2019, at 15; N.T., 12/21/2018, at 41-42. By way of contrast, Dr. Bliss testified that A.J.J. and A.M. are the least attached to Mother and therefore would not be negatively affected by termination of Mother's rights. OCO, filed March 18, 2019, at 15-16; N.T., 12/21/2018, at 42-43. As the orphans' court summarized:

> Based upon the testimony and evidence presented, the [orphans' c]ourt found that the two oldest children, A.F. and [A.A.W.], had an insecure attachment to Mother. While there was evidence that [A.F. and A.A.W.] would suffer some emotional consequences from the severance of the bond, the effects will not be long term if they engage with the proper therapeutic services. Both children have a history of exhibiting sexualized behaviors and both have presented with significant mental health concerns. The two youngest children, [A.J.J.] and A.M., have little to no bond with their mother as such they would not suffer any negative emotional consequences if their relationship with their mother was severed.

> It is clear to the [orphans' c]ourt that Mother loves her children. Throughout the history of the case, she has made progress in addressing some of her parenting deficits. While Mother has recently made progress in understanding and accepting that her children have been the victims of sexual abuse, she struggled to accept it for many years. Additionally, she has struggled to maintain healthy relationships with paramours. . . . [C]hildren have developed meaningful bonds with their foster parents. . . . As such, . . . OCYF has meet its burden of proving by clear and convincing evidence that grounds exist for termination under . . . 2[3] Pa.C.S.A. §2511(b).

OCO, filed March 18, 2019, at 16-17.

Thus, contrary to Mother's claim, Dr. Bliss's evidence at the December 2018 hearing was not identical to her testimony at the March 2018 hearing. At the later hearing, Dr. Bliss presented her evaluations and opinions with greater specificity than at the former hearing and testified thoroughly about the emotional bond between Mother and Children, the impact on Children of severing any such bond, and the "emotional needs and welfare" of Children pursuant to 23 Pa.C.S. § 2511(b). *See G.M.S.*, 193 A.3d 401 (section 2511(b) focuses on the "emotional needs and welfare of the child" and provides for an "analysis of the emotional bond," including "the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child").

Based on the foregoing, we conclude the orphans' court did not abuse its discretion by terminating Mother's parental rights to Children. Accordingly, we affirm.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/26/2019