J-S11031-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE THE ADOPTION OF: A.G.C.-M. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: L.C., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1286 WDA 2020 |

Appeal from the Decree Entered October 27, 2020
In the Court of Common Pleas of Erie County Orphans' Court at No(s):
60 in Adoption 2020

BEFORE:   STABILE, J., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    **FILED: APRIL 30, 2021**

Appellant, L.C. ("Mother"), appeals from the decree entered October 27, 2020, that terminated her parental rights to her child, A.G.C.-M. ("Child"), born 2017.  We affirm.

In its opinion, the trial court fully and correctly set forth the relevant facts and procedural history of this case.  *See* Trial Court Opinion, dated December 21, 2020, at 1-21.  Therefore, we have no reason to restate them at length here.

For the convenience of the reader, we briefly note that, "[o]n July 23, 2020, nearly ten months after th[e trial c]ourt made a formal adjudication of dependency, the Erie County Office of Children and Youth (hereinafter 'OCY'),

---

[*] Retired Senior Judge assigned to the Superior Court.

filed a Petition for Involuntary Termination of Parental Rights pursuant to 23 Pa.C.S.[] §§ 2511(a)(1), (a)(2), (a)(5), and (b)." *Id.* at 1 (footnote omitted). Mother had "had no physical contact with [Child] since at least November 2019, when she attended a medical appointment. Between November 2019 and February 2020, [Mother had been] on the run from law enforcement." *Id.* at 29 (citing N.T., 10/27/2020, at *Id.* at 26-29, 36). "A hearing on this Petition was held before th[e trial c]ourt on October 27, 2020. [Mother] appeared by video conference from the Erie County Prison." *Id.* at 1 (footnote omitted). At the conclusion of the hearing, the trial Court involuntarily terminated Mother's parental rights to Child.[1] On November 30, 2020, Mother filed this timely[2] direct appeal, along with a concise statement of errors complained of on appeal. *See* Pa.R.A.P. 1925(a)(2)(i).[3]

---

[1] "By separate Order on October 27, 2020, Father's ([O.M.]'s), parental rights to [Child] were also terminated. However, Father has not appealed the involuntary termination of his parental rights, and therefore [Mother]'s claims are not dependent on Father." Trial Court Opinion, dated December 21, 2020, at 1 n.1.

[2] "Whenever the last day of any such period shall fall on Saturday or Sunday, or on any day made a legal holiday by the laws of this Commonwealth or of the United States, such day shall be omitted from the computation." 1 Pa.C.S. § 1908.

Thirty days after October 27, 2020, was Thursday, November 26, 2020, and courts were closed both that day and the Friday thereafter for the Thanksgiving holiday. The next business day following the weekend was November 30, 2020, and Mother's notice of appeal consequently was timely.

[3] The trial court entered its opinion on December 21, 2020. *See* Pa.R.A.P. 1925(a)(2)(ii).

Mother presents the following issues for our review:

> Did the [t]rial [c]ourt abuse its discretion in terminating [Mother]'s parental rights when the record is comprised of insufficient competent evidence to establish grounds for termination, and when her incarceration was weighed against her?
>
> And, did the [t]rial [c]ourt abuse its discretion by finding that severance of [Mother]'s parental rights would serve the child's best interest?

Mother's Brief at 6 (not paginated) (some formatting).

We consider Mother's issues in light of our well-settled standard of review:

> When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that we would give to a jury verdict. We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.
>
> The standard of clear and convincing evidence is defined as testimony that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.
>
> The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence. If competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result.

*In re B.J.Z.*, 207 A.3d 914, 921 (Pa. Super. 2019) (internal quotation marks and some internal citations omitted) (some formatting).

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S. §§ 2101-2938. "Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights." ***B.J.Z.***, 207 A.3d at 921 (citation omitted).

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child.

***In re G.M.S.***, 193 A.3d 395, 401 (Pa. Super. 2018) (citation omitted).

## 23 Pa.C.S. § 2511(a)

In the current action, the trial court terminated Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), and (5). This Court will affirm if it agrees with the trial court's decision as to any one subsection of 23 Pa.C.S. § 2511(a). ***In re B.L.W.***, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). We affirm the trial court's decision to terminate Mother's parental rights to Child under subsections 2511(a)(1), which provides:

> **(a) General rule.—**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> > (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

23 Pa.C.S. § 2511(a)(1).

Mother contends that OCY "cannot establish grounds for termination under Section 2511(a) as the facts of record do not support the [trial c]ourt's findings." Mother's Brief at 9. She maintains that she "was compliant with [c]ourt-ordered reunification services up until the point at which she became incarcerated" and was on "waiting lists . . . for many programs offered in the state prison system," along with being "able to schedule intake appointments for outpatient recovery programs and religious studies[.]" *Id.* at 13 (citing N.T., 10/27/2020, at 48-49, 57-58). Although Mother quotes the language of Section 2511(a)(1), *id.* at 11, she presents no actual arguments specifically related to that subsection.

After a review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable John J. Trucilla, we conclude that Mother's challenge pursuant to Section 2511(a)(1) merits no relief. The trial court opinion comprehensively discusses and properly disposes of that claim:

> The subject Petition was filed on July 23, 2020. This meant that [Mother]'s conduct since January 23, 2020 (at least six months immediately preceding the filing), was at issue. The totality of the evidence presented at trial established that [Mother]'s conduct between at least January 23, 2020 and July 23, 2020, evidenced [Mother]'s settled purpose of relinquishing parental claim to [Child]. *See* 23 Pa.C.S.[] § 2511(a)(1). [Mother] had no physical contact with [Child] since at least November 2019, when she attended a medical appointment. [N.T., 10/27/2020,] at 36. Between November 2019 and February 20[20], [Mother] was on the run from law enforcement. *Id.* at 26-29. During this time, [Mother] did not maintain contact with OCY [n]or work on her treatment plan. *Id.* at 26-27. When [Mother] did finally contact OCY on February 12, 2020, she failed to follow through with

- 5 -

turning herself in to probation as she had promised. *Id.* at 51-52. [Mother] had made it clear that she was more concerned with not facing the consequences of her outstanding warrants than she was in reunifying with [Child]. *Id.* at 26-29; 41. Ultimately, [Mother] was arrested on [a] Louisiana warrant, she incurred new charges, and her probation was revoked. *Id.* at 31; *see also*, Erie County Criminal Docket No. CP-25-CR-3093-2018. Due to the new charges and revocation, [Mother] has been incarcerated since February 21, 2020. *Id.* at 31. During her incarceration, [Mother] has again failed to make "a genuine effort to maintain communication and association with the child." *In re Z.P.*, 994 A.2d [1108,] 1118-21 [(Pa. Super. 2010)]. This totality of conduct fortifies that [Mother] did not maintain ". . . continuing interest in the child and a genuine effort to maintain communication and association with the child." [*Id.* Mother] also failed to ". . . make diligent efforts towards the reasonably prompt assumption of full parental responsibilities." *Interest of K.M.W.*, 238 A.3d [465,] 474 [(Pa. Super. 2020) (*en banc*)].

[Mother] has refused or failed to perform parental duties. *See* 23 Pa.C.S.[] § 2511(a)(1). The vital question was whether [Mother] was able to perform parental duties, provide parental care, control or subsistence, and remedy the conditions which led to the initial placement. The evidence demonstrated that [Mother] is not capable of meeting the essential needs of a young child and will be unable to do so within a reasonable amount of time. OCY presented evidence that [Mother] was unable to take custody of [Child] as of the date of the hearing, as she remained incarcerated on an indeterminate sentence. Although [Mother] hoped she might be released sooner, she acknowledged that on paper her cumulative sentence was 17 months minimum to 42 months maximum, with a 3 year probation tail. N.T.[, 10/27/2020,] at 55-56. [Mother] also acknowledged that she was facing revocation in Louisiana and could incur further incarceration there. *Id.* Any early release and ability to assume custody of [Child] in the near future is speculative at best.

Also critical to the [trial c]ourt's analysis as to whether [Mother] "evidenced a settled purpose of relinquishing parental claim to the child," (23 Pa.C.S.[] § 2511(a)(1)), [Mother] failed to keep in contact with OCY and to work her treatment plan during the pendency of the case. While the [trial c]ourt could graciously credit [Mother] with approximately five weeks of compliance, from October to November 2019, she quickly gave up and absconded

from her court-ordered supervision. [Mother] explained her conduct, stating:

> **[MOTHER]:** . . . I actually did comply for, umm - I stopped everything, like, my meetings with [the OCY caseworker] and Justice Works. Umm, and my treatment was Pyramid. I stopped all of that around the exact same time.
>
> **THE COURT:** What time was that?
>
> **[MOTHER]:** Umm, around mid-November.
>
> **THE COURT:** Well, it begs the question, why?
>
> **[MOTHER]:** Well, because I felt like no matter what I tried to do, everything seemed, like, against me. Umm, I know that's not the way to think when you - you know, my child is involved, and it. involves, umm, getting her back.

N.T.[, 10/27/2020,] at 49. The [trial c]ourt reminded [Mother] the first permanency hearing had not yet occurred by mid-November, and at the time the goal was still reunification. *Id.* Importantly, the [trial c]ourt had not even had the opportunity to assess [Mother]'s compliance with the treatment plan or consider a modification. *Id.* [Mother] conceded these facts, continuing:

> **[MOTHER]:** Right. I'm not – I'm talking about everything else.
>
> **THE COURT:** Okay.
>
> **[MOTHER]:** Along with - like, I was on county probation, I had to do community service for them. I was on state parole. And I was doing, umm intensive outpatient through Pyramid. And then I was meeting with [the OCY caseworker]. I met with her - I think it was at Justice Works, where we, umm, set up, like parenting, and stuff like that. Umm, on top of it I had to go to regular groups, and things like that. I had to report to county probation. I just - I got overwhelmed with all of that. On top of Louisiana at the last minute. I tried to - umm, they had a hearing for me scheduled December 5th. And I tried to reschedule that with my attorney down there. I couldn't get in touch with him.
>
> And because I couldn't make that hearing, I felt like everything else would fall. Like, as in, my probation, and

> things like that. And I did give up. And I shouldn't have, considering, like I said, my child. Umm, I got overwhelmed. And instead of me talking to someone about it, I didn't. I just quit.
>
> *Id.* at 49-50. It is clear that [Mother]'s protestation of being "overwhelmed" is due to her own choices of drug use and criminal activity, leading to her incarceration and parole supervision.
>
> [Mother] has failed to "exercise reasonable firmness in resisting the obstacles which limit . . . her ability to maintain the parent/child relationship." *See In re J.T.M.*, 193 A.3d [403,] 410-11 [(Pa. Super. 2010)]. [Mother] made minimal, if any, effort to overcome the obstacles of drug use and her criminal behavior which took her away from the child. Importantly, this was the first time [Mother] had complained of being "overwhelmed" by the services outlined in the treatment plan and further eroded any remnant of credibility to this claim. Further supporting th[e trial c]ourt's finding that OCY met its burden by clear and convincing evidence to terminate [Mother]'s parental rights pursuant to § 2511(a)(1) was the fact that [Mother] had never had a visit with the child throughout the life of this dependency case. [Mother] went to one medical appointment for [Child]. This reinforced that [Mother] "refused or failed to perform parental duties." 23 Pa.C.S.[] § 2511(a)(1).
>
> After a close examination of [Mother]'s "individual circumstances" and consideration of [Mother]'s explanations for her failure to perform her parental duties, the [trial c]ourt found the "totality of the circumstances" supported termination of [Mother]'s parental rights at subsection 2511(a)(1). *In re Adoption of A.C.*, 162 A.3d [1123,] 1129 [(Pa. Super. 2017)]. Clearly, as demonstrated, there was sufficient and ample evidence to support th[e trial c]ourt's finding that [Mother]'s conduct of complete non-compliance with court-ordered treatment and her virtual abandonment of the child through her flight from criminal consequences "evidenced a settled purpose of relinquishing parental claim to a child." 23 Pa.C.S.[] § 2511(a)(1).

Trial Court Opinion, dated December 21, 2020, at 28-32.

Based on the foregoing, we find that the trial court did not err nor abuse

its discretion in finding that the statutory grounds for terminating Mother's

parental rights pursuant to 23 Pa.C.S. § 2511(a)(1) were established through clear and convincing evidence. *See B.J.Z.*, 207 A.3d at 921. In reaching this conclusion, we are reminded of the words of our Supreme Court:

> A decision to terminate parental rights, never to be made lightly or without a sense of compassion for the parent, can seldom be more difficult than when termination is based upon parental incapacity. The legislature, however, in enacting the 1970 Adoption Act, concluded that a parent who is incapable of performing parental duties is just as parentally unfit as one who refuses to perform the duties.

*In re Adoption of S.P.*, 47 A.3d 817, 827 (Pa. 2012).

## 23 Pa.C.S. § 2511(b)

Since a court must engage in a bifurcated process prior to terminating parental rights, *B.J.Z.*, 207 A.3d at 921, we next consider Section 2511(b), which provides:

> The court in terminating the right of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing furnishings, income, clothing and medical care if found to be beyond the control of the parent.

23 Pa.C.S. § 2511(b).

> Section 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. As this Court has explained, Section 2511(b) does not explicitly require a bonding analysis and the term 'bond' is not defined in the Adoption Act. Case law, however, provides that analysis of the emotional bond, if any, between parent and child is a factor to be considered as part of our analysis. While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.

In addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

***G.M.S.***, 193 A.3d at 401 (citation and internal brackets omitted) (some formatting).

Mother's entire argument concerning Section 2511(b) is as follows:

With respect to the evidence presented concerning [C]hild's best interests and the potential effect of termination, the only facts of record are that [C]hild is in a pre-adoptive home where she seems loved and cared for, and that reports from that placement resource indicated that she (the resource) did not believe that severance of parental rights would have an impact on [C]hild[. N.T., 10/27/2020, at] 38-39. This evidence is insufficient to support a finding under Sec. 2511(b).

Mother's Brief at 14 (some formatting).

Again, after a review of the record, the briefs of the parties, the relevant law, and Judge Trucilla's cogent analysis, we conclude that Mother's challenge pursuant to Section 2511(b) likewise merits no relief. The trial court opinion carefully examines and correctly disposes of that claim:

[N]o evidence was presented of an existing bond between [Mother] and [Child]. [C]hild was the tender age of two years old at the time of placement on October 3, 2019. However, in reality the child had been out of [Mother]'s primary care for the majority of time since at least July 2018, at only six months old.

Prior to the formal removal by OCY on October 3, 2019, [C]hild had been in the primary custody of her maternal great-grandmother and maternal grandmother due to [Mother]'s active addiction, incarceration, and homelessness. Upon removal in October 2019, [Child] saw [Mother] one time -- at a doctor's appointment. [Mother] never had an in-person visit with [C]hild

throughout this matter. [Mother] has made no efforts to exercise physical visitation in over a year. The only contact [Mother] has had with [Child] has been occasional telephone calls, wherein [C]hild does not even recognize her as the mother. There is simply no evidence that [Mother] has been able to provide [Child] with the comfort, security, and stability necessary for [Child]'s needs and welfare. Therefore, it is reasonable to conclude that no bond exists and it would not be detrimental to [C]hild to sever the parent-child relationship. ***See In re K.Z.S.***, 946 A.2d [753,] 762-763 [(Pa. Super. 2008)].

Conversely, evidence was presented that [Child] is doing well in the kinship home. The home is a preadoptive home. All of [Child]'s needs are being met and [C]hild has bonded with the family. [Child] also has the benefit of being placed with her biological sister. [Child] is receiving the love, comfort, security, and stability necessary for [C]hild's welfare through the kinship home. Evidence demonstrated there is no detrimental impact to [Child] if [Mother]'s parental rights are terminated in this matter.

[Child], as any three-year[-]old child, is desperate for consistency and permanency in a loving, safe and stable home. [Mother] has failed to demonstrate that she can provide this for [Child]. Perhaps this case is best summarized by the following brief exchange at the termination hearing between th[e trial c]ourt and [the] OCY caseworker . . . :

> **THE COURT:** I think the more direct question is, has [Mother] ever placed the best interests of the child above her own, through action or deed?
>
> **[OCY CASEWORKER]:** No, she has not.

[N.T., 10/27/2020,] at 41.

Therefore, th[e trial c]ourt, after carefully reviewing the circumstances of this case and giving "primary consideration to the developmental, physical and emotional needs and welfare of [Child]," found the termination of [Mother]'s parental rights at subsection 2511(b) to be in [Child]'s best interest. [Mother]'s claim regarding the sufficiency of the evidence at this subsection is without merit.

Trial Court Opinion, dated December 21, 2020, at 40-41.

Based on the foregoing, we conclude the trial court did not abuse its discretion by terminating Mother's parental rights to Child. Accordingly, we affirm.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/30/2021