J-S64040-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| IN THE MATTER OF THE ADOPTION OF T.N.C. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: L.M.M., NATURAL MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1142 WDA 2019 |

Appeal from the Order Entered June 28, 2019
In the Court of Common Pleas of Erie County Orphans' Court at No(s):
9B In Adoption 2017

| | | |
|---|---|---|
| IN THE MATTER OF THE ADOPTION OF T.A.M. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: L.M.M., NATURAL MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1143 WDA 2019 |

Appeal from the Order Entered June 28, 2019
In the Court of Common Pleas of Erie County Orphans' Court at No(s):
No. 9A, and In Adoption 2017

| | | |
|---|---|---|
| IN THE MATTER OF THE ADOPTION OF: M.M.A.W. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: L.M.M., NATURAL MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1144 WDA 2019 |

Appeal from the Order Entered June 28, 2019
In the Court of Common Pleas of Erie County Orphans' Court at No(s):
No. 9 In Adoption 2017

BEFORE:   BOWES, J., LAZARUS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:                FILED DECEMBER 13, 2019

L.M.M. (Mother) appeals from the May 23, 2019 decree entered in the Court of Common Pleas of the Erie County—Orphans' Court (trial court), granting the petition of the Erie County Office of Children & Youth (OCY) to terminate her parental rights to her minor children, T.N.C., T.A.M., and M.M.A.W. (collectively, the Children).   After careful review, we affirm.

I.

We glean the following facts from the certified record.   T.N.C. (age 10) and T.A.M. (age 5) were removed from Mother's care and placed in protective custody with OCY in July 2015 and adjudicated dependent shortly thereafter. Following a review hearing, in November 2015, they were returned to Mother's custody, though dependency continued.   However, M.M.A.W. (age 3) was born in January 2016 and only days after her birth, all of the Children were again removed from Mother's custody.   M.M.A.W. was also found to be dependent. All of the Children then remained in placement in various foster homes throughout the remaining history of the case.

In 2017, OCY petitioned to terminate Mother's parental rights and the parental rights of the Children's fathers.   In October 2017, the trial court terminated the parental rights of the fathers but found that OCY had not met

_____

[*] Retired Senior Judge assigned to the Superior Court.

its burden of proof with regard to Mother. As a result, the trial court ordered OCY to resume services with Mother to address her problems with drug and alcohol use, mental health, grief and parenting.

Patty Bush, the OCY caseworker who took over Mother's case when the initial termination petition was denied in 2017, testified that the denied petition was Mother's "second chance" to develop a relationship with the Children. (Notes of Testimony ("NT"), 6/24/19, at 5). However, Mother did not recognize that she had problems with drug and alcohol use and mental health. She made excuses when she repeatedly tested positive for marijuana and she delayed for months in pursuing treatment for her mental health problems. By June 2018, Mother had completed outpatient treatment for her drug use and was able to consistently pass drug screens, but for several months, Mother was unable to visit the Children and reform her bond with them because she failed the drug tests. Mother also did not continue with any treatment program or meetings after completing the outpatient therapy and she was arrested for disorderly conduct while intoxicated in 2019.

Both of the OCY caseworkers who had interacted with Mother following the denied termination petition opined that she had made no progress with her parenting skills. Tina Ferraro, an employee at Project First Step, testified that they had attempted to work with Mother to improve her parenting skills in the past, but Mother was unable to successfully complete the program. After the unsuccessful termination proceedings, Project First Step resumed

services with Mother. However, Mother would refuse to answer the door for appointments or would cancel or reschedule the appointments. She was unable to answer questions about her relationship with the Children and she would not interact with the Children during visits. Mother did not recognize any deficiencies in her parenting skills or display any desire to improve her parenting. Eventually, Project First Step discharged Mother a second time for lack of progress.

Prior to the dependency proceedings, T.N.C. witnessed domestic violence between Mother and M.M.A.W.'s father and he began trauma counseling while he was in foster care. Mother would deny that the abuse ever occurred, tell him not to talk about it as well as refuse to acknowledge his feelings about what he had witnessed. After being in foster placement for several years, T.N.C. seemed reluctant to talk about his life in front of Mother. He has expressed concern that Mother would be unable to keep him safe in her home.

Both OCY caseworkers and Ferraro opined that Mother had not made progress on any of her goals since the first termination petition was denied in 2017. One caseworker confirmed that there were no other services that the agency could offer Mother to address the issues that had led to dependency. Because she did not make adequate progress in developing her parenting skills, Mother was never permitted to have unsupervised visits with the Children.

As a result of Mother's lack of progress with OCY in the year following the denied petition for termination, the trial court changed the placement goal to adoption in November 2018. Finding that the evidence had established several statutory grounds for involuntary termination, the trial court entered a decree of involuntary termination of parental rights on June 28, 2019. Mother filed a timely notice of appeal, and both the trial court and Mother have complied with Pa.R.A.P. 1925.

## II.

On appeal, Mother argues that the termination decree should be reversed because it was not supported by clear and convincing evidence and that there was insufficient evidence that termination of her parental rights is in the best interests of the Children. As further discussed below, we hold that the trial court relied on statutory grounds for involuntary termination which are supported by our independent review of the record.

## A.

"The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in [the subsections of 23 Pa.C.S. § 2511(a)]." In re Adoption of J.N.M., 177 A.3d 937, 942 (Pa. Super. 2018) (quoting In re L.M., 923 A.2d 505, 511 (Pa. Super. 2007)). Clear and convincing evidence is that which is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the

precise facts in issue." In re D.L.B., 166 A.3d 322, 326 (Pa. Super. 2017) (citation and quotation marks omitted). The orphans' court may then enter a final decree of involuntary termination if it is in the child's best interests as outlined in Section 2511(b). Id.[1]

The trial court found clear and convincing evidence to terminate Mother's parental rights pursuant to Sections 2511(a)(1), (2), (5), and (8):

> (a) General rule.--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> * * *

_____

[1] We review such a decree for an abuse of discretion. In re G.M.S., 193 A.3d 395, 399 (Pa. Super. 2018) (citation omitted). Moreover, "[w]e give great deference to trial courts that often have first-hand observations of the parties spanning multiple hearings." In re Interest of D.F., 165 A.3d 960, 966 (Pa. Super. 2017). "We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence." In re S.H., 879 A.2d 802, 805 (Pa. Super. 2005). "The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence." In re A.S., 11 A.3d 473, 477 (Pa. Super. 2010). "If competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result." Id.

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

\* \* \*

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

When reviewing a trial court's order terminating parental rights, we need only agree as to one subsection of Section 2511(a), as well as Section 2511(b), to affirm the order. In re B.L.W., 843 A.2d 380, 384 (Pa. Super. 2004) (en banc). Accordingly, we proceed to our analysis of the trial court's findings under subsection 2511(a)(8).

It is undisputed that all of the Children have been in foster placement since January 2016, over three years prior to OCY filing the termination petitions at issue in this case. M.M.A.W. has been in placement for virtually her entire life. It is clear that the Children have been removed from Mother's care much longer than the twelve months prescribed by the statute. 23 Pa.C.S. § 2511(a)(8).

OCY also presented clear and convincing evidence that the conditions that led to the Children's placement continue to exist. Two OCY caseworkers testified that since the first termination petition was denied in 2017, Mother has made virtually no progress in addressing the issues that led to the Children's placement. The only area of progress that is apparent from the record is that, after many months where Mother's visitation with the Children was limited due to positive drug tests, Mother was able to complete outpatient treatment and stop using marijuana. However, she still uses alcohol and has not sought continued treatment for drug and alcohol use. When ordered to address both the drug use and mental health issues that had led to the Children's placement, Mother delayed for months and did not follow through with appointments, counselling or treatment.

Further, Mother was largely uncooperative with Project First Step's attempts to address the deficiencies in her parenting. She refused to acknowledge that she had any problems with parenting and would not take responsibility for the Children's placement. She did not interact well with the Children during her limited visitation time or respond productively when given instruction on her parenting. She does not recognize that T.N.C. witnessed domestic violence as a young child or validate his fears when he attempted to discuss the trauma in counselling. As a result, T.N.C. seems reluctant to talk to Mother about his life. All of the Children are thriving in foster care and have substantially bonded with their foster family. The trial court did not abuse its

discretion in finding that OCY presented sufficiently clear and convincing evidence to support termination based on Section 2511(a)(8).

B.

Having found that the termination of Mother's parental rights was justified under Section 2511(a)(8), the next step of our inquiry is whether the termination is in the best interests of Children. There are a number of factors to consider in this analysis:

> Section 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. . . . While a parent's emotional bond with his or her child is a major aspect of . . . section 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.

In re Adoption of C.D.R., 111 A.3d 1212, 1219 (Pa. Super. 2015); In re M.Z.T.M.W., 163 A.3d 462, 464 (Pa. Super. 2017). It is sufficient for the court to rely on the opinions of social workers and caseworkers when evaluating the impact that termination of parental rights will have on a child. See In re Z.P., 994 A.2d 1108, 1121 (Pa. Super. 2010). "In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship." Id.

Moreover, "[c]ommon sense dictates that courts considering termination must also consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents." In re T.S.M.,

71 A.3d 251, 267 (Pa. 2013) (citation omitted). The orphans' court may consider intangibles such as the love, comfort, security and stability the child might have with the foster parent. See In re N.A.M., 33 A.3d 95, 103 (Pa. Super. 2011). Ultimately, the concern is the needs and welfare of the child. In re Z.P., supra at 1121.

There was clear and convincing evidence produced at the hearing to find that the Children are thriving in their current placement and that termination of Mother's parental rights is in their best interest. In his earlier placements, T.N.C. exhibited some behavioral problems but those issues have abated in his current placement. NT at 34. He has expressed that he wishes to stay with his foster parents. Id. at 33, 84. All of the Children have bonded with the foster parents. Id. at 33, 36, 41. They refer to the foster parents as "mom and dad," and they think of the other children in the home as their own siblings. Id. at 83. They have not been able to develop the same bond with Mother, and T.N.C. has expressed concern about whether Mother would be able to keep him safe. Id. at 91. The Children's current placement has provided them with stability and security for two years, and the trial court did not abuse its discretion in finding that it is in the Children's best interest to remain with their foster parents.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  12/13/2019