J-S65034-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: A.L.-M.C., A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: M.S.B., MOTHER | : : : : : : | |
| | : | No. 1226 MDA 2019 |

Appeal from the Decree Entered June 24, 2019
In the Court of Common Pleas of Lancaster County Orphans' Court at
No(s): 2019-00097

BEFORE: PANELLA, P.J., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    **FILED DECEMBER 30, 2019**

Appellant, M.S.B. ("Mother"), appeals from the decree of the Orphans' Court Division of the Court of Common Pleas of Lancaster County, entered June 24, 2019, terminating her parental rights to her child, A.L.-M.C. ("Child"), born September 2010.[1]  We affirm.

In its opinion, the trial court fully and correctly set forth the relevant facts and procedural history of this case.  Trial Court Opinion, filed August 23, 2019, at 2-6.  For convenience of the reader, we note that, on October 12, 2017, Lancaster County Children and Youth Social Service Agency ("the Agency") implemented a safety plan for this family "based on concerns related to drug abuse by Mother"; "[a]ccording to the safety plan, Mother was to have

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] On April 11, 2019, Child's biological father, A.C., voluntarily relinquished his parental rights to Child.

no unsupervised contact with" Child. *Id.* at 2. On December 8, 2017, the Agency petitioned for temporary custody of Child, which the trial court granted, and the Agency placed Child with her maternal grandparents, L.B. ("Maternal Grandmother") and M.B. (collectively, "Maternal Grandparents"). *Id.* at 3. On January 22, 2018, Child was adjudicated dependent. *Id.* "From the time of the Child's placement to the date the Agency filed to terminate parental rights, Mother is recorded as only visiting with the Child twice out of her scheduled visits, amounting to two times in one year[,]" even though the trial court had ordered weekly visitation at the Agency. *Id.* at 3, 9. Although Mother was incarcerated in Lancaster County from July 13 to 24 and July 28 to August 14, 2018, N.T., 5/20/2019, at 11, there is nothing in the record to suggest that Mother had been incarcerated or otherwise prevented from visiting Child between her placement on December 8, 2017, and Mother's first incarceration on July 13, 2018.

Following permanency review hearings on May 11 and October 18, 2018, the Agency petitioned to terminate Mother's parental rights to Child pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8) and (b) on January 9, 2019. Trial Court Opinion, filed August 23, 2019, at 4-5; Petition to Terminate Parental Rights of Parents, 1/9/2019, at 2-3 ¶¶ 7(A)-(D) (citing Section 2511(a)(1), (2), (5), and (8)), ¶ 10 ("[t]ermination would best serve the needs and welfare of [C]hild").

Hearings on the termination petition[2] were held on February 11,[3] April 8,[4] and May 20, 2019. Mother was incarcerated in Lebanon County during the February hearing but participated via telephone. N.T., 2/11/2019, at 3. She was in a rehabilitation center during the April hearing but again participated by telephone. N.T., 4/8/2019, at 3; N.T., 5/20/2019, at 11.[5] During the May hearing, Mother was once more incarcerated in Lebanon

---

[2] Child was represented at all termination hearings by a guardian *ad litem* ("GAL"). The trial court is "not required to appoint a separate attorney to represent Child[]'s legal interests, so long as Child[]'s GAL was an attorney, and so long as Child[]'s legal and best interests [do] not appear to be in conflict." **In re G.M.S.**, 193 A.3d 395, 400 (Pa. Super. 2018); **see also In re L.B.M.**, 161 A.3d 172, 173-75, 180 (Pa. 2017) (courts must appoint counsel to represent the legal interests of any child involved in a contested involuntary termination proceeding; a child's legal interests are distinct from his or her best interest, in that a child's legal interests are synonymous with the child's preferred outcome, and a child's best interest must be determined by the court); **In re T.S.**, 192 A.3d 1080, 1089-93 (Pa. 2018) (a child's statutory right to appointed counsel is not waivable, even where the child is too young or nonverbal to communicate his or her preference; reaffirming the ability of an attorney-guardian *ad litem* to serve a dual role and to represent a child's non-conflicting best interests and legal interests).

In the current case, Child's GAL was an attorney, and her legal and best interests do not appear to have been in conflict, as Child testified that she wanted to live with Maternal Grandparents and not with Mother. N.T., 6/24/2019, at 7, 9. Ergo, the trial court did not need to appoint a separate attorney to represent Child's legal interests. **G.M.S.**, 193 A.3d at 400.

[3] Mother had again been incarcerated in Lancaster County between December 6, 2018, and January 10, 2019. N.T., 5/20/2019, at 11.

[4] An additional permanency review hearing was held on March 29, 2019.

[5] At some point between her incarceration in Lebanon County and her release to the rehabilitation facility, Mother had also been incarcerated in Berks County, although the record is unclear as to when this Berks County incarceration occurred. **Id.**

County after she was unsuccessfully discharged from treatment, which qualified as a violation of her probation; she again participated by telephone. N.T., 5/20/2019, at 4, 11, 16, 22, 24.  Mother was represented by counsel at all termination proceedings.  During the May hearing, a caseworker from the Agency confirmed that Mother had been "sending letters to the Child from prison since the month of February [2019]."  Trial Court Opinion, filed August 23, 2019, at 6 (citing N.T., 5/20/2019, at 17-19).

Although all parties had rested at the end of the May hearing, on June 12, 2019, the trial court *sua sponte* re-opened the record and scheduled a fourth hearing for June 24, 2019.  Order to Reopen the Record, 6/12/2019.  At that additional hearing, the trial court "spoke with the Child in chambers, where the Child was unequivocally clear in her desire to be adopted by [M]aternal [G]randparents."  Trial Court Opinion, filed August 23, 2019, at 6 (citing N.T., 6/24/2019, at 7-9).  When asked why she did not want to live with Mother, Child answered that Mother "sometimes" does not "learn her lesson."  N.T., 6/24/2019, at 9.  Maternal Grandmother testified that "Child hardly ever asks about her Mother and does not ask to see her Mother."  Trial Court Opinion, filed August 23, 2019, at 6 (citing N.T., 6/24/2019, at 22).  Both Maternal Grandparents testified that "they are not opposed to Mother having contact with the Child in the future if Mother maintains sobriety."  *Id.* at 15 (citing N.T., 6/24/2019, at 22).

Following the June hearing, the trial court entered a decree terminating Mother's parental rights to Child.  On July 24, 2019, Mother filed this timely

- 4 -

appeal, along with a concise statement of errors complained of on appeal.

***See*** Pa.R.A.P. 1925(a)(2)(i).[6]

Mother now presents the following issues for our review:

I.      Did the [trial] court err and abuse its discretion in terminating the parental rights of Mother in that Mother was either incarcerated or a patient in a court-ordered inpatient rehabilitation facility during a significant period of time during the pendency of the underlying juvenile dependency action and the termination of parental rights action, but Mother nevertheless utilized the resources available to her in maintaining a place of importance in [C]hild's life. Mother regularly forwarded appropriate correspondence to the [Agency] case worker that either inquired about the well-being of [C]hild or that was intended for [C]hild?

II.     Did the [trial] court err and abuse its discretion in terminating the rights of Mother, as termination of the Mother's rights is not in the best interests of the child and will not promote the physical, mental, or emotional well-being of [C]hild, as a bond exists between Mother and the child, Mother being the primary - and only - caretaker for [C]hild, who was seven years old at the time of placement, from the birth of [C]hild until implementation of the Safety Plan?

III.    Did the [trial] court err and abuse its discretion in terminating the rights of Mother, as termination of the Mother's rights is not in the best interests of the child and will not promote the physical, mental, or emotional well-being of [C]hild, as Mother will in the near future be released from prison and within a reasonable time be capable of performing parental duties and providing permanency for [C]hild[?]

Mother's Brief at 8-9 (suggested answers omitted).

We consider Mother's issues in light of our well-settled standard of

review:

---

[6] The trial court entered its opinion on August 23, 2019.  ***See*** Pa.R.A.P. 1925(a)(2)(ii).

When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that we would give to a jury verdict. We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

The standard of clear and convincing evidence is defined as testimony that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.

The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence. If competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result.

*In re B.J.Z.*, 207 A.3d 914, 921 (Pa. Super. 2019) (internal quotation marks and some internal citations omitted) (some formatting). "A decision to terminate parental rights [is] never to be made lightly or without a sense of compassion for the parent[.]" *In re Adoption of S.P.*, 47 A.3d 817, 827 (Pa. 2012).

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S. §§ 2101-2938. "Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights." *B.J.Z.*, 207 A.3d at 921 (citation omitted).

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court

determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child.

*In re G.M.S.*, 193 A.3d 395, 401 (Pa. Super. 2018) (citation omitted).

## 23 Pa.C.S. § 2511(a)

The trial court terminated Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), and (8). This Court will affirm if it agrees with the trial court's decision as to any one subsection of 23 Pa.C.S. § 2511(a). *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). We affirm the trial court's decision to terminate Mother's parental rights to Child under subsections 2511(a)(1), which provides:

The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

23 Pa.C.S. § 2511(a)(1). Section 2511 further provides: "With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the condition described therein which are first initiated subsequent to the giving of notice of the filing of the petition." *Id.* § 2511(b).

Mother contends that the trial court –

erred and abused its discretion in terminating [her] parental rights . . . in that Mother was either incarcerated or a patient in a court-

- 7 -

> ordered inpatient rehabilitation facility during a significant period of time during the pendency of the underlying juvenile dependency action and the termination of parental rights action, but Mother nevertheless utilized the resources available to her in maintaining a place of importance in [C]hild's life. Mother regularly forwarded appropriate correspondence to the . . . Agency case worker that either inquired about the well-being of [C]hild or that was intended for [C]hild.

Mother's Brief at 18. Mother continues that "[i]ncarceration alone is not a basis upon which an involuntary termination may be ordered pursuant to Section 2511." *Id.* at 20 (citing *In re C.S.*, 761 A.2d 1197, 1201 (Pa. Super. 2000) (*en banc*)). She argues that she "did what she could to remain involved with [C]hild and to prepare herself for doing the things necessary for reunification with [C]hild after release from prison." *Id.* at 21. She insists that her "efforts to show concern for [C]hild and the nearness of the completion of her prison sentence justifies denial of the Agency's request to terminate [her] parental rights." *Id.* at 22. Mother does not contest that any particular element of any of 23 Pa.C.S. § 2511(a)(1) was not established by the Agency. *See* Mother's Brief at 18-23.

Contrary to Mother's assertion, *id.* at 20, *C.S.* does not, in fact, support her claim. Instead, *C.S.* states, in relevant part:

> We agree that incarceration of a parent does not, in itself, provide sufficient grounds for termination of parental rights; **however, an incarcerated parent's responsibilities are not tolled during his incarceration.** Parental rights may not be preserved by waiting for some more suitable financial circumstance or convenient time for the performance of parental duties and responsibilities. Further, parental duty requires that the parent not yield to every problem, but must act affirmatively, with good faith interest and effort, to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances.

761 A.2d at 1201 (emphasis added). In truth, this Court's discussion of the appellant's circumstances in **C.S.** is analogous to that of Mother's circumstances in the current appeal:

> We note that, even for the sake of his child, apparently Appellant cannot stay out of jail. Further, the trial court concluded, and we find that the record supports its conclusion, that despite his incarceration Appellant has not made every possible effort to stay in touch with his child and to participate, however vicariously, in his child's life.

**Id.** Like the appellant in **C.S.**, Mother has also failed to stay out of prison – in three different counties -- even for Child's sake. **Compare id. with** N.T., 2/11/2019, at 3; N.T., 4/8/2019, at 3; N.T., 5/20/2019, at 4, 11, 16, 22. The trial court also concluded – and we find that the competent evidence of record supports its conclusion – that, despite Mother's incarceration, she has not made every possible effort to stay in touch with Child and to participate, however vicariously, in Child's life. **Compare C.S.**, 761 A.2d at 1201, **with** Trial Court Opinion, filed August 23, 2019, at 5, 9-10 (*e.g.*, "[w]hile Mother sent letters to the Child during her incarceration, such action took place after the filing of the petition for termination of parental rights, therefore, the [trial c]ourt is prohibited from considering Mother's subsequent efforts to have contact with her child after the filing of the petition" pursuant to 23 Pa.C.S. § 2511(b)); **see also B.J.Z.**, 207 A.3d at 921 ("we are limited to determining whether the decision of the trial court is supported by competent evidence"); **contra** Mother's Brief at 18, 20. Furthermore, Mother's incarceration is not a defense for her failure to attend visitation with Child, Mother's Brief at 18,

because she only appeared at two of her scheduled weekly visits between Child's placement in December 2017 and the Agency's filing of the termination petition in January 2019, even though there is no evidence of record that Mother was incarcerated during the seven months between Child's placement and Mother's initial incarceration in July 2018. Trial Court Opinion, filed August 23, 2019, at 3, 5, 9; N.T., 5/20/2019, at 11.

As for Mother's arguments that she "prepare[d] herself for doing the things necessary for reunification with [C]hild after release from prison" and that "the nearness of the completion of her prison sentence justifies denial of the Agency's request to terminate [her] parental rights[,]" Mother's Brief at 21-22, we observe: "Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs." *In re K.Z.S.*, 946 A.2d 753, 759 (Pa. Super. 2008) (citation omitted); *see also C.S.*, 761 A.2d at 1201 ("Parental rights may not be preserved by waiting for some more suitable financial circumstance or convenient time for the performance of parental duties and responsibilities."). Mother's parental rights cannot be preserved while waiting for her release from prison and from drug and alcohol treatment. *See C.S.*, 761 A.2d at 1201; *K.Z.S.*, 946 A.2d at 759.

For these reasons, the trial court did not err nor abuse its discretion in finding that the statutory grounds for terminating Mother's parental rights

pursuant to 23 Pa.C.S. § 2511(a) were established through clear and convincing evidence. *See B.J.Z.*, 207 A.3d at 921.

## 23 Pa.C.S. § 2511(b)

Having determined that Mother's conduct warrants termination of her parental rights, the court also must engage in the second part of the analysis pursuant to Section 2511(b). *G.M.S.*, 193 A.3d at 401.

> The court in terminating the right of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing furnishings, income, clothing and medical care if found to be beyond the control of the parent.

23 Pa.C.S. § 2511(b).

> Section 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. As this Court has explained, Section 2511(b) does not explicitly require a bonding analysis and the term 'bond' is not defined in the Adoption Act. Case law, however, provides that analysis of the emotional bond, if any, between parent and child is a factor to be considered as part of our analysis. While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.
>
> In addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*G.M.S.*, 193 A.3d at 401 (citation and internal brackets omitted) (some formatting).

- 11 -

Mother maintains that the trial court --

> erred and abused its discretion in terminating [her] rights . . . , as termination of [her] rights is not in the best interests of the child and will not promote the physical, mental, or emotional well-being of the child, as a bond exists between Mother and [C]hild, Mother being the primary – and only - caretaker for [C]hild, who was seven years old at the time of placement, from the birth of [C]hild until implementation of the Safety Plan [and] . . . as Mother will in the near future be released from prison and within a reasonable time be capable of performing parental duties and providing permanency for [C]hild.

Mother's Brief at 24, 27. Mother continues that "the section 2511(b) analysis done by the [trial] court was overly simplistic and fails to consider the context and history of this case." *Id.* at 27-28. Mother acknowledges that Child stated that "she does not want to live with Mother," but Mother asserts that "there is a significant difference between the stated desire of an eight year old and the lack of a parent child bond." *Id.* at 25. Mother adds that the trial court "err[ed] in placing such considerable weight on a decision supposedly made by an eight year old. The child at that age simply lacks the maturity to make such a decision." *Id.*

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable David R. Workman, we conclude Mother's second and third appellate issues – both concerning Section 2511(b) -- merit no relief. The trial court opinion properly discusses and disposes of those questions:

> The [trial c]ourt went to great lengths to ensure that the Child's welfare would best be promoted through a termination of Mother's parental rights. The [trial c]ourt reopened the record to hear from

- 12 -

the Child and [M]aternal [G]randparents to ensure permanency for the Child with the grandparents. The Child's testimony made it clear that she desired to stay with her grandparents and potentially be adopted by them. N.T., 6/24/19, p. 7. The Child indicated that she would not want to live with Mother again for fear that her Mother would go back to doing drugs. N.T., 6/24/2019, p. 9. Maternal [Grandparents] testified that they are available as a permanent resource for the Child. Maternal [G]randmother testified that at this point in time, the Child hardly asks about her Mother, nor does she ask to visit or see her Mother. N.T., 6/24/2019, p.22.

In the case of *In re C.L.G.*, the Superior Court reviewed a trial court's opinion to involuntarily terminate the parental rights of a Mother who struggled with drugs and had endangered the welfare of her child. 956 A.2d 999, 1003 (Pa. Super. 2008). Even though the Mother in *In re C.L.G.*, maintained sobriety in prison, *id.* at 1004, and sent gifts to her child from prison, *id.* at 1005, the Court nevertheless terminated her parental rights. Part of the Superior Court's opinion rings especially true in this case as well:

> Furthermore, if we were to permit Mother further opportunity to cultivate an environment where she can care for C.L.G., we would be subjecting a child, who has been waiting for more than two years for permanency, to a state of proverbial limbo in anticipation of a scenario that is speculative at best. While it appears that Mother has managed to remain drug-free in the confines of incarceration, whether she can maintain that status among the external pressures of the outside world remains to be proven.

*Id.* at 1008. [Child], likewise, has been waiting for nearly two years for permanency - a fact that the Court took into great consideration when deciding whether to terminate the Mother's parental rights. Whether Mother will be successful in maintaining sobriety upon release from prison is to be determined - but the Child's permanency should not be delayed based on a chance that Mother will be able to care for her again. It is apparent to the [trial c]ourt that it is in the best interest of the Child to terminate Mother's parental rights so the Child may be free for adoption by her grandparents. Additionally, Maternal Grandparents made it clear during their testimony that they are not opposed to Mother having contact with the Child in the future if Mother maintains sobriety. N.T., 6/24/2019, pp. 15, 21. While there may be an

- 13 -

opportunity for a relationship between Mother and the Child in the future, at present, the Child does not have a bond with her Mother and the [trial c]ourt found that the Child's welfare will best be served by terminating Mother's parental rights.

Trial Court Opinion, filed August 23, 2019, at 14–15 (some formatting).

Our only addition to the trial court's analysis is that, although Mother contends that "a bond exists between" herself and Child, she cites no evidence whatsoever in support of this statement. Mother's Brief at 24. She merely argues that the trial court should not have found Child's testimony about "the lack of a parent child bond" to be credible. *Id.* at 25. However, as noted above, "The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations[.]" *B.J.Z.*, 207 A.3d at 921. Credibility determinations are the prerogative of the trial court as fact-finder, and we cannot and will not substitute our judgment for that of the trial court, as Mother now requests we do. *See id.*

Accordingly, the decision of the trial court that "termination of Mother's rights is in the best interest of the Child pursuant to Section 2511(b)" is supported by competent evidence. Trial Court Opinion, filed August 23, 2019, at 15-16; *see also B.J.Z.*, 207 A.3d at 921.

* * *

Based on the foregoing, we conclude the trial court did not err nor abuse its discretion by terminating Mother's parental rights to Child. *See B.J.Z.*, 207 A.3d at 921.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>12/30/2019</u>