J-S44016-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| TERMINATION OF PARENTAL RIGHTS TO: Y.A.C., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: M.L.B., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1330 MDA 2022 |

Appeal from the Decree Entered August 17, 2022
In the Court of Common Pleas of York County Orphans' Court at No(s):
2021-0144a

BEFORE:   PANELLA, P.J., McLAUGHLIN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY McLAUGHLIN, J.:                **FILED:  MARCH 3, 2023**

M.L.B. ("Father") appeals from the decree terminating his parental rights as to his minor child, Y.A.C. ("Child"). We affirm.

A panel of this Court previously summarized the facts as follows:

> Child is the son of Father and T.N.C. (Mother), who are not married. In January 2020, Child came into the custody of [York County Office of Children, Youth & Families ("CYF")] on an emergency basis. The order was based on evidence which demonstrated that continuation or return of Child to the home of Mother and Father was not in the best interest of Child. Child was then placed in foster care, where he remains with a half-sibling.
>
> At a hearing on January 28, 2020, the court adjudicated Child dependent and awarded legal and physical custody of Child to CYF. Father did not attend this hearing and he did not file an appeal. His whereabouts were unknown to CYF until May 2020 when he was discovered to be in the York

---

[*] Retired Senior Judge assigned to the Superior Court.

County prison, where he was being held for charges of criminal homicide and possession with intent to deliver.

The court held numerous permanency review hearings between July 2020 and May 2021. Due to Father's incarceration, he did not make any progress toward alleviating the circumstances that resulted in Child being dependent. His requests for visits and for telephone visits with Child were denied by the York County Prison. CY[F] also provided Father with a Family Service Plan relating to Child which he did not object to until January 2021, wherein he raised concerns about certain family findings and requested visitation for the first time. Nevertheless, Child knows Father and recalls living with him. Father provided no monetary support or gifts to Child but did send some clothing items. He also never requested any photographs of Child.

At some point during the dependency proceedings, Father submitted a request, through the Interstate Compact for the Placement of Children (ICPC), to assess his sister as a possible resource for Child. The sister was located in North Carolina. The sister traveled to Pennsylvania and met with Child two times for three hours per visit. The CYF caseworker stated the visits went "well" with the second visit being "a little bit more natural and easy going."

On June 18, 2021, CYF filed a petition for involuntary termination of both Mother's and Father's parental rights pursuant to 23 Pa.C.S.[A.] § 2511(a)(1), (2), (5), and (8).

The court held a termination hearing on August 31, 2021. Child, then age six, was represented during the proceeding by T.L. Kearney, Esquire, whom the court appointed to represent Child as legal counsel.

At the hearing, CY[F] indicated it was not going move Child upon approval of the ICPC because it "would like to see th[e] relationship [with Father's sister] explored more before [it] would consider placement in her care." Moreover, CY[F] stated while it did receive verbal approval, it never received an official transmittal with Pennsylvania state approval regarding Father's sister because her local ICPC office did not send the transmittal through the proper channels. Father requested the court delay its decision pending the formal outcome of the ICPC process. The court denied his

> request but noted his position – that he desired his sister to have custody.
>
> That same day, the court then terminated Father's parental rights pursuant to 23 Pa.C.S.[A.] § 2511(a)(2), (5), and (8). The court also found termination will best serve Child's developmental, physical, and emotional needs and welfare, pursuant to 23 Pa.C.S.[A.]§ 2511(b).

*In the Int. of Y.A.C.*, No. 1255 MDA 2021, 2022 WL 907285, unpublished memorandum at 1-2 (Pa.Super. filed March 29, 2022) (citations and footnote omitted).

Father appealed. We vacated the termination decree and remanded for further proceedings because there was no indication on the record that the court had made the requisite determination that Child's legal and best interests did not conflict when it appointed Attorney Kearney to serve as both Child's legal counsel and guardian *ad litem* ("GAL"). *Id.* at 4. On remand, the court determined that there was no such conflict and granted the petition to terminate Father's parental rights. *See* Trial Court Order, April 22, 2022, at 3.

Father thereafter filed an appeal of the April 22, 2022 order, docketed at 777 MDA 2022. We vacated the April 22, 2022 order as a nullity and quashed the appeal. We determined that the trial court had lacked jurisdiction because it had entered its April 22, 2022 order before we had remitted the record after the prior appeal. *See* Order, June 21, 2022.

The court then on August 17, 2022, after a hearing, again determined that there was no conflict in Attorney Kearney representing Child's legal and

best interests and issued an order granting CYF's petition for involuntary termination of Father's parental rights. Father filed the instant timely appeal.

Father raises the following issue:

> Did the trial court commit reversible error [by] involuntarily terminating the parental rights of the natural father when the Child's needs and welfare could have been met by giving custody to a paternal aunt and preserving the parent/child relationship?

Father's Br. at 5.

We review an order involuntarily terminating parental rights for an abuse of discretion. *In re G.M.S.*, 193 A.3d 395, 399 (Pa.Super. 2018). In termination cases, we "accept the findings of fact and credibility determinations of the trial court if they are supported by the record." *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (quoting *In re Adoption of S.P.*, 47 A.3d 817, 826 (Pa. 2012)). "If the factual findings have support in the record, we then determine if the trial court committed an error of law or abuse of discretion." *In re Adoption of K.C.*, 199 A.3d 470, 473 (Pa.Super. 2018). We will reverse a termination order "only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." *In re Adoption of S.P.*, 47 A.3d at 826.

Termination of parental rights is controlled by Section 2511 of the Adoption Act. *In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007). Under this provision, the trial court must engage in a bifurcated analysis prior to terminating parental rights:

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*Id.* (citations omitted).

Father does not challenge the court's determination that sufficient grounds existed for terminating Father's parental rights under Section 2511(a). Rather, in his sole issue, Father contends the court erred by terminating his rights under Section 2511(b) because his sister was purportedly available to care for Child. Father argues:

[W]hile Father's incarceration and pending charges caused him to be unavailable as a resource for the Child, he offered his sister in North Carolina as a resource for the Child. A formal investigation under the ICPC was undertaken and informal approval was had, awaiting only final paperwork for approval. The Aunt from North Carolina traveled to Pennsylvania for two visits with the Child, and at least the second of those went well. Giving custody to the Aunt in North Car[o]lina until Father could become available to parent once again could have preserved the unity of this family.

Father's Br. at 10.

Under Section 2511(b), the trial court must consider "the developmental, physical and emotional needs and welfare of the child" to

determine if termination of parental rights is in the best interest of the child. *See* 23 Pa.C.S.A. § 2511(b). This inquiry involves assessment of "[i]ntangibles such as love, comfort, security, and stability[.]" *In re C.M.S*., 884 A.2d 1284, 1287 (Pa.Super. 2005). The court must also examine the parent-child bond, "with utmost attention to the effect on the child of permanently severing that bond." *Id.* However, the "mere existence of an emotional bond does not preclude the termination of parental rights." *In re N.A.M.*, 33 A.3d 95, 103 (Pa.Super. 2011). Rather, the trial court must consider whether severing the bond "would destroy an existing, necessary and beneficial relationship." *Id.* (citation omitted). The court must also examine any pre-adoptive home and any bond between the child and the foster parents. *In re T.S.M.*, 71 A.3d at 268.

Here, Father conflates the issue of termination of his parental rights with the issue of placement/adoption of Child. The issue of who eventually adopts Child has no bearing on whether Father's parental rights were properly terminated. Indeed, pursuant to Section 2512 of the Adoption Act, an agency need not aver in its petition to terminate that an adoption is presently contemplated or that a person with a present intention to adopt exists. 23 Pa.C.S.A. § 2512(b)(3). "Furthermore, no particular adoption plan need be shown before the trial court is permitted to terminate a parent's rights. In fact, the Supreme Court has noted that one of the purposes of the adoption laws is to allow the agency to proceed with termination proceedings independently of an adoption." *Monroe Cty. Children and Youth Servs. v.*

- 6 -

*Werkheiser*, 598 A.2d 313, 316 (Pa.Super. 1991) (citing *In re Burns*, 379 A.2d 535, 541 (Pa. 1977)). The only issue before the trial court was the determination of the termination of Father's parental rights — not the issue of possible custody of Child to the paternal aunt. The court therefore properly limited its decision to the termination issue.

The court found that termination of Father's parental rights was in Child's best interests pursuant to Section 2511(b). The record supports the court's finding. Child had been in care for 19 months at the time of the termination hearing on August 31, 2021. N.T. 8/31/21, at 75. There was evidence that Child's daily needs were entirely being met by the foster family, who are a pre-adoptive resource. *Id.* at 85. Child has required significant dental care and emotional support, which has been managed exclusively by the foster parents. *Id.* at 85-86, 96-97. Child is strongly bonded to his brother, with whom he lives with at the foster home, and there was testimony that Child would be detrimentally impacted if he was separated from his brother and his other siblings. *Id.* at 54, 90-91. The foster mother testified that she loves Child and is greatly bonded to him, and Child is stable and thriving in her care. *Id.* at 94-96. Further, Child's counsel and GAL indicated that Child wants to be adopted by his foster family and fully understands that Father's parental rights need to be terminated before adoption could occur. N.T. 8/17/22, at 9.

We conclude that CYF presented sufficient evidence under Section 2511(b). We see no reasonable basis to disturb the court's decision that termination of Father's parental rights would be in Child's best interests.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/03/2023