J-S17029-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: K.C.J.V., A MINOR | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: J.L.V., MOTHER | : : : : : : : | |
| | : | No. 365 EDA 2025 |

Appeal from the Decree Entered February 4, 2025
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-AP-0000389-2024

BEFORE:  MURRAY, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY McLAUGHLIN, J.:                    **FILED JUNE 26, 2025**

J.L.V. ("Mother") appeals from the decree terminating her parental rights to K.C.J.V. ("Child"). Mother's counsel has filed an ***Anders***[1] brief. We affirm the decree terminating Mother's parental rights and grant counsel's application to withdraw.

Child (born June 2023) was premature when born. He was removed from Mother's care due to Mother's unstable housing and concerns regarding whether Mother's intellectual disabilities affected her ability to care for Child. N.T., Feb. 4, 2025, at 8-9. In October 2024, the Philadelphia Department of Health and Human Services ("DHS") filed a petition to terminate Mother's parental rights. The trial court held a hearing.

_____

[1] ***Anders v. California***, 386 U.S. 738 (1967).

Community Umbrella Agency ("CUA") case manager April Jones testified that Mother's single case plan objectives included to keep the CUA updated regarding her criminal matter, attend family school, complete IQ testing, attend a referral for a parenting capacity evaluation, and to engage with ARC. *Id.* at 10-11. Mother has been in jail since July 2024 on charges of rape of a 10-year-old family member. *Id.* at 11-12. Jones stated that prior to her incarceration Mother had been participating in family school and had completed two parenting classes while she was incarcerated, although the parenting classes were separate from the class required by the single case plan objectives. *Id.* at 13-14. Jones testified that Mother had not completed an IQ examination or a parenting capacity evaluation. *Id.* at 14. Jones stated that Mother signed up for ARC, where she was to engage in housing, reunification, and employment courses, but did not complete the session due to her incarceration. *Id.* at 15. Jones testified that Mother does not have housing or employment lined up if she were to be released from incarceration. *Id.* at 15-16. Jones testified that Mother had supervised visits with Child prior to her incarceration and Jones would want supports at visits if they were to resume. *Id.* at 16-17. Jones stated that Child would not experience irreparable harm if Mother's rights were terminated. *Id.* at 18.

Jones further testified that Child's relationship with his resource parent is "[v]ery loving, very nurturing," and he "enjoy[ed] his resource parent" and her children. *Id.* at 24. She stated that Child looks to his resource parent for his safety and well-being. *Id.* She stated that the resource parent takes Child

to his medical appointments and provides for him financially, and Child looks to the resource parent when he is sick, hungry, or hurt. *Id.* at 25. The resource parent is a pre-adoptive home. *Id.* On cross-examination, Jones testified that Mother consistently attended her bi-weekly visits with Child prior to her incarceration and that the family school "thought highly" of Mother and thought she did a good job. *Id.* at 28-29.

Mother testified that she completed a parenting class while incarcerated and was currently in another parenting group. *Id.* at 31-32. Mother testified she attended visits with Child and had a bond with him. *Id.* at 33-34. She stated she missed the IQ evaluations because of transportation and because she did not have money. *Id.* at 34. Mother testified that if she was released she would live at her mother's house or go to a program called Why Not Prosper, which helps with housing. *Id.* at 35. Mother agreed she would need extra support if she were to care for Child and testified that Child's maternal grandmother would help. *Id.*

The trial court found termination proper under 23 Pa.C.S.A. §§ 2511(a)(1), (2), (5), and (8) and 2511(b). Mother filed a timely appeal. Mother's counsel has filed an *Anders* brief in this Court.

Before we consider whether the appeal is frivolous, we must first determine whether counsel has followed the procedures for withdrawing as counsel. *See Commonwealth v. Goodwin*, 928 A.2d 287, 290 (Pa.Super. 2007) (*en banc*) (stating that "[w]hen faced with a purported *Anders* brief, this Court may not review the merits of any possible underlying issues without

first examining counsel's request to withdraw"). To withdraw pursuant to *Anders*, counsel must: 1) "petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous"; 2) furnish a copy of the brief to the client; and 3) advise the client that he or she has the right to retain other counsel or proceed *pro se*. **Commonwealth v. Cartrette**, 83 A.3d 1030, 1032 (Pa.Super. 2013) (*en banc*).

> Additionally, in the **Anders** brief, counsel seeking to withdraw must:

> (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

**Commonwealth v. Santiago**, 978 A.2d 349, 361 (Pa. 2009). If counsel meets all the above obligations, "it then becomes the responsibility of the reviewing court to make a full examination of the proceedings and make an independent judgment to decide whether the appeal is in fact wholly frivolous." **Id.** at 355 n.5 (quoting **Commonwealth v. McClendon**, 434 A.2d 1185, 1187 (Pa. 1981)).

Here, we find that counsel has complied with the above technical requirements. In the **Anders** brief, counsel has provided a summary of the procedural and factual history of the case with citations to the record. Further, counsel's brief identifies issues that could arguably support the appeal, as well

as counsel's explanation of her conclusion that the appeal is frivolous. Additionally, counsel served Mother with a copy of the **Anders** brief and advised her of her right to proceed *pro se* or to retain a private attorney to raise any additional points she deemed worthy of this Court's review. **See** Application to Withdraw as Counsel, filed Mar. 11, 2025, at Exh. A, Letter from Counsel to Mother. Mother has not responded to counsel's application to withdraw. As counsel has met the technical requirements of **Anders** and **Santiago**, we will proceed to the issues counsel has identified.

In the **Anders** brief, counsel lists the following issues:

> A. Whether DHS failed to prove by clearing and convincing evidence that [M]other's parental rights should have been terminated pursuant to 23 Pa.C.S.§ 2511(a)(1),(2), (5) and (8) since she had substantially completed her objectives as required?
>
> B. Whether [t]here was a strong emotional and parental bond between [Mother] and [C]hild which would have had a negative effect on [C]hild if the parental bond was permanently severed pursuant to 23 Pa.C.S.§ 2511(b)?

**Anders** Br. at 5.

We review an order involuntarily terminating parental rights for an abuse of discretion. **In re G.M.S.**, 193 A.3d 395, 399 (Pa.Super. 2018). In termination cases, we "accept the findings of fact and credibility determinations of the trial court if they are supported by the record." **In re T.S.M.**, 71 A.3d 251, 267 (Pa. 2013) (quoting **In re Adoption of S.P.**, 47 A.3d 817, 826 (Pa. 2012)). "If the factual findings have support in the record, we then determine if the trial court committed an error of law or abuse of

discretion." ***In re Adoption of K.C.***, 199 A.3d 470, 473 (Pa.Super. 2018). We will reverse a termination order "only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." ***In re Adoption of S.P.***, 47 A.3d at 826.

A party seeking to terminate parental rights has the burden of establishing grounds for termination by clear and convincing evidence. ***In re Adoption of K.C.***, 199 A.3d at 473. Clear and convincing evidence means evidence "that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue." ***Id.*** (citation omitted).

Termination of parental rights is controlled by Section 2511 of the Adoption Act. ***In re L.M.***, 923 A.2d 505, 511 (Pa.Super. 2007). Under this provision, the trial court must engage in a bifurcated analysis prior to terminating parental rights:

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*Id.* (citations omitted). To affirm the termination of parental rights, this Court need only affirm the trial court's decision as to any one subsection of Section 2511(a). *In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*).

Here, the court found termination proper under subsections (a)(1), (2), (5), and (8), as well as under Section 2511(b). In the *Anders* brief, counsel notes Mother argues DHS failed to establish termination was proper under Section 2511(a). Mother further argues termination was not proper under Section 2511(b), maintaining there is a strong parental bond between Mother and Child that would be detrimental to sever.

As only one basis for termination under Section 2511(a) is necessary, we will focus on the court's termination of Mother's parental rights under subsection (a)(2), which states:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . .
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

23 Pa.C.S.A. § 2511(a)(2).

Section 2511(a)(2) requires the moving party to prove three factors by clear and convincing evidence: "(1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused

the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." *In re K.Z.S.*, 946 A.2d 753, 758 (Pa.Super. 2008) (citation omitted). The grounds for termination in Section 2511(a)(2), "parental incapacity that cannot be remedied, are not limited to affirmative misconduct; those grounds may also include acts of refusal as well as incapacity to perform parental duties." *Id.* (citation omitted). "Parents are required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities." *Matter of Adoption of M.A.B.*, 166 A.3d 434, 443 (Pa.Super. 2017) (citation omitted).

The trial court concluded DHS proved, by clear and convincing evidence, that termination was proper under Section 2511(a)(2). The court reasoned that Mother had been referred for IQ testing and for an evaluation of her ability to care for child and, prior to her incarceration, failed to take the steps necessary to undergo the evaluations. It noted that Mother did not have an ability to remedy this.

There is support in the record for the court's findings and we perceive no reasonable basis to challenge its conclusion that termination is proper under Section 2511(a)(2). In addition to the trial court's reasoning, we further point out that, as the court discusses in its analysis of Section 2511(a)(1), although Mother regularly attended visits with Child prior to her incarceration, and completed a parenting class while incarcerated, she had not completed

any other single case plan objective and did not perform parental duties. This issue is frivolous.

We next discuss whether termination is proper under Section 2511(b). The focus under Section 2511(b) is not on the parent, but on the child. *In re Adoption of R.J.S.*, 901 A.2d 502, 508 (Pa.Super. 2006). Under Section 2511(b), the trial court must consider "the developmental, physical and emotional needs and welfare of the child" to determine if termination of parental rights is in the best interest of the child. *See* 23 Pa.C.S.A. § 2511(b). This inquiry involves the assessment of "[i]ntangibles such as love, comfort, security, and stability[.]" *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa.Super. 2005). The court must also examine the parent-child bond, "with utmost attention to the effect on the child of permanently severing that bond." *Id.* However, the "mere existence of an emotional bond does not preclude the termination of parental rights." *In re N.A.M.*, 33 A.3d 95, 103 (Pa.Super. 2011). Rather, the trial court must consider whether severing the bond "would destroy an existing, necessary and beneficial relationship." *Id.* (citation omitted). The court must also examine any pre-adoptive home and any bond between the child and the resource parents. *In re T.S.M.*, 71 A.3d at 268.

Here, the trial court concluded DHS met its burden under Section 2511(b). It reasoned that there was no parental bond between Mother and Child, who was one year old. N.T. at 45. The court noted that Mother attended family school, but there was no evidence that she met Child's parental needs throughout the case or that she engaged in parental activities sufficient to

- 9 -

establish a bond. It further found that Child does not look to Mother to meet his needs and he would not suffer irreparable harms if Mother's right were terminated. There is record support for the court's findings, and we find no reasonable basis on which to challenge its legal conclusion. This issue is frivolous.

We agree with counsel that the issues raised in the **Anders** brief are frivolous. Further, after a thorough review of the record, we see no non-frivolous issues for appellate review.

Decree affirmed. Petition to withdraw granted.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/26/2025